**UNITED STATES of America,**

v.

**BADALAMENTI, et al., Defendants.**

**No. 84 Civ. 236 (PNL).**

United States District Court,
S.D. New York.

June 26, 1987.

See also 663 F.Supp. 1539.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for the U.S.

Michael Kennedy, New York City, for defendant Gaetano Badalamenti.

Ivan Fisher, New York City, for defendant Salvatore Catalano.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Defendant Gaetano Badalamenti moves for entry of a judgment of acquittal or for a new trial on numerous grounds, including (1) that the evidence was insufficient to prove his membership in a single conspiracy under Count One, (2) that the evidence under Count 2, the Continuing Criminal Enterprise, failed to show (a) a series of three or more violations of the federal narcotics laws, (b) realization of substantial income, or (c) supervision of five or more persons; (3) failure to prove venue in the Southern District of New York; (4) the denial of a motion to reopen the evidence during summations to receive proof of the attempted murder of Pietro Alfano; (5) grant of the Government's application to excuse Juror 313 during deliberations after her daughter received a threatening phone call; (6) denial of defendants' application to add an alternate to the deliberating jury when Juror 313 was excused; (7) excessive length and complication of the trial and the denial of severance motions; (8) violation of the principle of specialty arising from the terms of his extradition from Spain. The motions are without merit and require little discussion.

The motions addressed to the excusal of Juror 313 are discussed in another memorandum. A few words are appropriately addressed to the length and complication of the trial and the motion to sever the Badalamenti group for separate trial.

Early in the pretrial proceedings the court on its own motion expressed concern as to the propriety of joinder of so many defendants for trial. I directed the Government to submit a factual memorandum explaining and justifying the single conspiracy theory. On the basis of this briefing I determined that the trial could proceed as a single conspiracy properly joined, but I added that questions of severance could be reopened throughout as well as after trial. When a superseding indictment added allegations of murder of Carmine Galante, I directed briefing on the propriety of joining that evidence. The Government represented its evidence would show that the murder was done to further the central purpose of the conspiracy in that it was committed to secure for the conspirators the exclusive Mafia "license" to import heroin to the United States. Because this objective was sufficiently closely related to the central purpose of the conspiracy alleged, I determined the evidence could be received.

Contrary to Badalamenti's allegation that the court "steadfastly ignor[ed his]

counsel's repeated pleas for a separate trial," the issue of the scope of the conspiracy and possibility of severance received continued attention. When I determined that the Government's evidence failed to demonstrate sufficiently that the murder of Galante was done to secure an exclusive Mafia license to import narcotics, that evidence was excluded. In addition, I excluded evidence of the distribution in Philadelphia of narcotics emanating from the New York core as being too remote.

The reason for the repeated denial of the applications of the Badalamenti group for severance was that they had no merit. Although it is true the trial was very long (far longer than predicted at the outset) and involved some evidence that was only indirectly pertinent to the Badalamenti group, Badalamenti and his group were shown to be intimately involved in the central drug-importing function of the conspiracy.

The evidence first demonstrated the basic organization of the Sicilian Mafia (of which Gaetano Badalamenti was for a time head of its Central Commission) and the adoption by its members in the late 1970s and early 1980s of strategies for importing heroin into the United States. It was shown how links were forged between Mafia members in Sicily and a central group of Mafia members in New York and New Jersey for importing of heroin. The evidence showed also how channels were created to send hundred million dollar proceeds of the U.S. drug sales to banks in Switzerland to the credit of the Sicilian Mafia sellers. It was then shown how Gaetano Badalamenti, operating from Brazil where he had fled to avoid prosecution, Mafia enemies or both, working through his family members who had established themselves in pizza restaurants in the midwest of the United States, operating in secrecy by use of codes, street corner pay telephones for receipt by appointment of international calls, and travel with false documents under false names, undertook to become a major supplier of narcotics to the New York/New Jersey group.

■ The joinder of the Badalamenti group with their co-conspirators is fully in conformity with governing precedent for the trial of a single conspiracy. The fact that some co-conspirators do not know or have direct contact with others, that some operate at different times and places from others, is no bar to their trial together as members of a single conspiracy, if that is what they are. *See, e.g., United States v. Calbas*, 821 F.2d 887 (2d Cir.1987); *United States v. Borelli*, 336 F.2d 376, 382–87 (2d Cir.1964) (Friendly, J.), *cert. denied*, 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965); *United States v. Agueci*, 310 F.2d 817, 826–27 (2d Cir.1962), *cert. denied*, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); *United States v. Stromberg*, 268 F.2d 256, 264–66 (2d Cir.), *cert. denied*, 361 U.S. 863, 868, 80 S.Ct. 119, 4 L.Ed.2d 102 (1959); *United States v. Rich*, 262 F.2d 415, 417–18 (2d Cir.1959); *United States v. Bruno*, 105 F.2d 921, 922–23 (2d Cir.), *rev'd on other grounds*, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257 (1939).

It is true that the trial was of extraordinarily long duration and that the evidence covered an enormous amount of material. The reasons for that are several: First, the criminal conspiracy charged was a broad, large-scale continuing criminal business enterprise. Second, persons operating at the highest levels of organized crime in multi-million dollar transactions act with great caution, dealing only with people they know and talking in most guarded fashion. They rarely handle the drugs they sell; they do not negotiate, or even meet, with strangers. It is therefore extremely rare to obtain direct, simple evidence of their dealings through an undercover agent's drug purchases. It is equally rare and difficult to obtain testimony from cooperating witnesses who turn state's evidence. The bulk of the evidence in this case was the result of laborious, time-consuming surveillance, both visual and electronic. Almost none of this evidence was incriminating on its face. The surveillance showed only contacts, visits, meetings and occasionally deliveries of packages. The wiretapping revealed conversations so guarded and coded that they were, on their face,

incomprehensible. It was only by putting together the voluminous results of such continuous surveillance that the circumstantial evidence fitted together like a crossword puzzle to show that the defendants were involved in a large-scale international conspiracy to import drugs.

To argue, as the Badalamenti group does, that they have a right not to be subject to a long, complicated trial argues, in effect, that the highest levels of crime have the right to be immune from prosecution if they conduct their criminal affairs in such a manner as not to admit of a simple, rapid trial.

■ I have no doubt that the Badalamenti group were correctly joined for trial with their co-conspirators. *Cf. United States v. Ebner,* 782 F.2d 1120, 1127 (2d Cir.1986) (participation in conspiracy for shorter period than codefendants did not require severance); *United States v. Panza,* 750 F.2d 1141, 1149 (2d Cir.1984) (some codefendants nearly always more culpable than others); *United States v. Stirling,* 571 F.2d 708, 733 (2d Cir.), *cert. denied,* 439 U.S. 824, 99 S.Ct. 93, 58 L.Ed.2d 116 (1978) (defendant properly tried with co-conspirators though he did not participate in every detail of conspiracy); *United States v. Moten,* 564 F.2d 620, 626–27 (2d Cir.), *cert. denied,* 434 U.S. 942, 959, 974, 98 S.Ct. 438, 54 L.Ed.2d 304 (1977) (citing other drug conspiracy cases with many defendants). In fact, had the Badalamentis been tried alone, practically all of the trial evidence would have been admissible against them; it would have been necessary and proper to introduce a very large part of the evidence of the activities of the other defendants to explain their role in the conspiracy. Although the evidence of the Badalamentis' *complicity* consisted primarily of the proof of their own acts, it was necessary also to show the *nature* of the conspiracy they joined in. Since all of the Badalamentis' telephone conversations were carefully coded, the nature of the conspiracy does not appear clearly from the evidence of their own actions. To prove the nature of the conspiracy they joined in, it would thus have been necessary to introduce extensive evidence of the activities of their Sicilian and New York/New Jersey co-conspirators. Under these circumstances, the interests favoring joint trial substantially outweighed any prejudice to the Badalamentis. *Cf. United States v. Werner,* 620 F.2d 922, 928–29 (2d Cir.1980); *United States v. Stromberg, supra,* 268 F.2d at 264–66.

■ As to Badalamenti's claim of prejudice resulting from inconsistency between his defense and that of Mazzurco, I note two points: First the defenses were not incompatible. Mazzurco said the phone calls concerned trade in gemstones. Badalamenti testified they did not relate to narcotics and refused to say what they were. *Cf. United States v. Potamitis,* 739 F.2d 784, 789–90 (2d Cir.), *cert. denied,* 469 U.S. 918, 934, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984); *United States v. Carpentier,* 689 F.2d 21, 27–28 (2d Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 957 (1983). Secondly, when Badalamenti's counsel moved for severance before trial based on anticipated inconsistency of defenses, he declined to explain the claimed inconsistency unless in an ex parte conference. I refused to receive ex parte representations without good cause. A defendant has the right, if he chooses, to maintain secrecy as to the strategy of his defense, but if in opting for secrecy he gives up the opportunity to present arguments to the court in support of his motions, that is his own tactical decision.

Badalamenti's contention that the jurors were confused is nothing more than a self-serving assertion. It is convincingly disproved by the jury's extraordinarily discriminating verdict and special findings, which found for defendants on numerous issues precisely where the prosecution's evidence was weakest. The guilty verdicts were solidly supported by the evidence.

The other motions require no comment.

Gaetano Badalamenti's motions are denied.

SO ORDERED.