UNITED STATES of America,

v.

Mario BIAGGI, Stanley Simon, Peter Neglia, John Mariotta, Bernard Ehrlich, Richard Biaggi, and Ronald Betso, Defendants.

No. 87 Cr. 265 (CBM).

United States District Court, S.D. New York.

Oct. 23, 1987.

Rudolph W. Giuliani, U.S. Atty., New York City by Mary T. Shannon, for U.S. of America.

Kramer, Levin, Nessen, Kamin & Frankel by Maurice N. Nessen, New York City, for defendant Stanley Simon.

MOTLEY, District Judge.

## OPINION

Defendants in this case are charged, by a Second Superseding Indictment ("Indictment") in fifty counts filed on August 5, 1987, with violations of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1982), involving nineteen predicate acts. Count One charges the RICO violations. Count Two charges the defendants with RICO conspiracy. Twenty-seven of the remaining counts charge substantive offenses based on the predicate acts; fifteen charge income tax evasion; the remainder charge filing of false financial disclosure statements, perjury, and extortion.

Defendant Stanley Simon, Bronx Borough President until his resignation on March 11, 1987, moves in the alternative (a) to require the Government to submit an offer of proof under Fed.R.Crim.P. 12(b) explaining why he is charged with RICO violations; (b) to sever his trial from that of his codefendants, either as a matter of law under Fed.R.Crim.P. 8, or as an exercise of this Court's sound discretion under Fed.R.Crim.P. 14; (c) to sever Counts Twenty-One and Twenty-Three of the Second Superseding Indictment.[1] By a scheduling order dated July 27, 1987, the Court took this motion on submission, at Simon's request. For the reasons set forth below, we deny the motion in its entirety.

## FACTS

For the purposes of this motion, only a partial and abbreviated account of the alleged facts in this complex case is necessary.[2]

The mysterious behavior and ultimate suicide of Queens Borough President Donald Manes in early 1986 called attention to ongoing federal and local investigations into the conduct of New York City public officials, some of which led to the prosecution and conviction of major political figures.[3] Stanley Simon first came under investigation in February 1986 in connection with alleged overcharges for printing expenses incurred during his 1985 campaign. N.Y. Times, Feb. 6, 1986, reproduced as Exhibit F to Affidavit of Maurice Nessen.[4] No indictments resulted from this inquiry. The present case grows out of a joint investigation by the United States Attorney for the Southern District of New York, Rudolph W. Giuliani, and the District Attorney for the Bronx, Mario Merola, that focused on the Wedtech Corporation.[5] Wed-

---

1. Defendant John Mariotta joins this motion, saying: "We agree with Simon that Mariotta would be extremely prejudiced by a joint trial with Simon where Simon is tried on counts which have nothing to do with Mariotta or Wedtech." Affidavit of Jeffrey Glekel 2 n. *. Of course, Simon is not concerned with prejudice to Mariotta as a result of his being tried with Simon. The Court takes this reference to potential prejudice *to mean that Mariotta joins Simon's motion only insofar as Simon moves for relief from prejudicial joinder under Fed.R. Crim.P. 14*, and takes up this question in its proper place.

2. A more complete statement of the facts will appear in this Court's opinion on defendants' omnibus pretrial motions.

3. *See, e.g., United States v. Friedman,* 635 F.Supp. 782 (S.D.N.Y.1986) (decision on pretrial motions in prosecution of corruption in New York City Parking Violations Bureau, involving Bronx Democratic Party chairman Stanley Friedman).

4. The Department of Justice's Public Corruption Unit first received allegations of misconduct by Simon in January 1986. Affidavit of Mary T. Shannon in Support of Government's Response to Defendants' Omnibus Motions ("Shannon Response Aff.") ¶ 20.

5. Wedtech was first investigated by the Department of Defense Criminal Investigative Service in June 1985. Shannon Response Aff. ¶ 18. The United States Attorney's investigation began

tech, founded in 1965 by defendant Mariotta as the Welbilt Electronic Die Corporation, had grown from a small tool-and-die manufacturing concern to a successful publicly traded defense contractor, primarily on the strength of contracts awarded it under the Small Business Administration's Section 8(a) program, which provides set-aside contracts for minority-owned businesses. Mariotta was praised by President Reagan as one of the "conscientious and hard working individuals" who are responsible for "real progress in this country." Lathem, Prez Hails Jobs "Hero," N.Y. Post, Mar. 7, 1984, reproduced as Exhibit B of Affidavit of Maurice Nessen. In December 1986, however, Wedtech declared bankruptcy; in January 1987, four Wedtech officials under grand jury scrutiny—Fred Neuberger, chairman of the board; Anthony Guariglia, the president; Mario Moreno, vice chairman; and Alfred Rivera, a director—resigned.[6] Thompson, Wedtech Go Ahead, N.Y. Daily News, Jan. 14, 1987, reproduced as Exhibit E of Affidavit of Maurice Nessen. In February the four admitted diverting millions of dollars in Wedtech funds to their personal use and bribing local, state, and federal officials. Thompson, Wedtech Four Admit Thefts and Bribes, N.Y. Daily News, Feb. 5, 1987, reproduced as Exhibit E of Affidavit of Maurice Nessen. One of the city officials the Wedtech Four implicated was Borough President Simon. Amid rumors of his imminent indictment, Mr. Simon resigned on March 11, 1987.

Simon's indictment came down on April 1, 1987. Its six counts charged Simon with (1) extorting a job and salary increases for his brother-in-law, Henry Bittman, from Wedtech; (2) extorting some $50,000 from Wedtech; (3) extorting some $14,000 in

kickbacks from an employee in his office, later identified as one Ralph Lawrence; (4) falsely answering questions put to him by a grand jury in February, 1986, about whether he had ever received, been offered, or solicited things of value in connection with his official duties; (5) obstructing justice by offering this false testimony to the grand jury; (6) evading federal income taxes by failing to report some $23,000 in income for 1985. The indictment against Simon was depicted in the press as the first in a series that would encompass other prominent New York politicians. *See, e.g.,* Barbanel, Simon, Ex–Bronx Leader, Indicted for Extortion and Pay Kickbacks, N.Y. Times, Apr. 2, 1987, reproduced as Exhibit N of Affidavit of Maurice Nessen.

The promised Superseding Indictment, naming all the present defendants, came down on June 3, 1987. This second Indictment brought the same charges against Simon, but embedded them in a RICO scheme.[7] This second Indictment contained fifty-eight counts but had to be replaced by a third, the present Indictment in fifty counts, to conform to the Supreme Court's decision in *McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). It is this third and current Indictment that Simon attacks.

## DISCUSSION

### I. *Simon's Arguments*

Simon's motion for an offer of proof is meant as a preliminary to further motions to sever, as well as motions to dismiss. Simon Notice of Motion 1. This Court finds that the Government has already provided sufficient information to deny Simon's present motions to sever. Therefore, the motion to require the Government to provide an offer of proof is denied.[8]

---

in March 1986. *Id.* ¶ 22. The joint investigation arose in July 1986. *Id.* ¶ 24.

**6.** Neuberger, Moreno, Guariglia, and Lawrence Shorten, a financial consultant who held a variety of positions for Wedtech, were named as unindicted coracketeers. Indictment ¶¶ 12–15.

**7.** Five of the six counts were pleaded separately in the Superseding Indictment as Counts Nineteen through Twenty–Three. The obstruction of justice count was pleaded only as one of the

RICO predicate acts, Racketeering Act Sixteen. The two counts of extortion from Wedtech were also pleaded as predicate acts, Racketeering Acts Three and Four.

**8.** Simon's claim that the District Courts of the Second Circuit exhibit a trend toward requiring pretrial offers of proof from the Government in RICO cases deserves brief discussion. Simon cites five cases in which he claims such offers of proof have been required: *United States v. Badalamenti,* 663 F.Supp. 1542 (S.D.N.Y.1987) (Le-

This opinion proceeds to consider Simon's motions for severance.

Simon first argues that severance is required as a matter of law under Fed.R. Crim.P. 8(b). He presents what he calls a "syllogism" in support of this claim: [9]

(1) if Count 1 cannot be sustained because Mr. Simon did not knowingly participate in an enterprise that included the corruption of others and

(2) if Count 2 cannot be sustained because he did not know of any of the other alleged schemes (thereby making it "duplicitous" by virtue of its pleading a single conspiracy where multiple conspiracies really existed), then

(3) the surviving counts charging various bad acts by other defendants cannot be joined with counts involving Mr. Simon, for they would not arise under the same "series of acts or transactions" and therefore do not satisfy the requirements of Fed.Cr.R. 8(b).

Memorandum of Law in Support of Defendant Stanley Simon's Pre–Trial Motions for a Pre–Trial Statement from the Government and for Severances ("Simon Memo of Law") 12. Simon then suggests that this Court employ a "stepped procedure" to evaluate the indictment. Simon does not clearly explain what he means by such a procedure. Logic dictates, however, that we proceed in a manner that may reflect Simon's suggestion.

First, then, this Court will assess Counts One and Two in terms of substantive RICO law. In an invitation we have rejected, Simon apparently would have this Court require the Government to tender an offer of proof and a statement of its theories, following remarks of Judge Sofaer in *United States v. Castellano*, 610 F.Supp. 1359, 1397 (S.D.N.Y.1985). He predicts that following such a tender this court will or

val, J.); *United States v. Gallo*, 654 F.Supp. 463 (E.D.N.Y.1987) (Weinstein, J.); *United States v. Friedman*, 635 F.Supp. 782 (S.D.N.Y.1986) (Knapp, J.); *United States v. Persico*, 646 F.Supp. 752 (S.D.N.Y.1986) (Brieant, J.); *United States v. Castellano*, 610 F.Supp. 1359 (S.D.N.Y. 1985) (Sofaer, J.). As far as this Court can discern, in *Badalamenti, Gallo,* and *Persico,* the district judges ordered the Government to provide further information on their own motion, not on a motion from the defense; in *Friedman,* the Government made the offer of proof voluntarily.

It should be noted that the exchange cited from Judge Brieant's pretrial conference in *Persico,* in which the Government contended that the court had to accept the allegations of the indictment as true, and Judge Brieant responded that this was not so, inasmuch as severance rests on considerations of fairness, can only have been directed to a Rule 14 motion to sever, not a Rule 8 motion. For purposes of a Rule 8 motion, the court must indeed accept the allegations of the indictment; *see, e.g., United States v. Kabbaby,* 672 F.2d 857, 860 (11th Cir.1982); *United States v. Sutherland,* 656 F.2d 1181, 1190 n. 6 (5th Cir.1981). Considerations of fairness, *i.e.* prejudice, are relevant only to a discretionary severance under Rule 14. Thus, Simon's citation of *Persico* in this context is disingenuous.

As his Reply Memorandum evinces, Simon's principal support for his motion is Judge Sofaer's discussion in *Castellano.* In that case, Judge Sofaer observed that several defendants' motions to require the Government to show that it had a prima facie case were in effect motions to dismiss, which could normally not be raised until the conclusion of the Government's case. 610 F.Supp. at 1397. Judge Sofaer went on to distinguish such motions from "pretrial scrutiny of the government's theory, and of the evidence it represents it expects to be able to introduce at a joint trial." *Id.* Judge Sofaer did not, however, then go on to require the Government to tender an offer of proof; instead, he evaluated the Government's theory directly. Thus, Simon cites no authority for the proposition that a *defendant* can move to require the Government to tender an offer of proof. *See* note 14 *infra* (noting that burden of proof of prosecutorial bad faith, including prosecution on discredited theory of joinder, is on defendant); *cf. United States v. Santoro,* 647 F.Supp. 153, 182 (E.D.N.Y. 1986) (in response to argument that substantive counts of indictment, charging crimes committed as part of pattern of racketeering activity, *should be severed from RICO count,* court observed that "That connection must of course be proven at trial. But the government need not do so at this stage simply to satisfy the defendants that the joinder is proper.").

9. Of course, what Simon offers is not a syllogism. It is not even an argument, let alone a valid argument. It is a material conditional with a conjunctive antecedent, having the form "If A and B, then C." There is a hypothetical syllogism of which this conditional is the conclusion, namely "If ((if A then C) and (if B then C)) then (if A and B then C)." This syllogism expresses a valid argument; however, it expresses a sound argument only if the premises, "If A then C" and "If B then C," are true. And this is what is at issue.

should hold that Count One does not charge him with a RICO offense because it does not allege that he knowingly participated in a racketeering enterprise. In that case, the argument apparently continues, this Court would have to dismiss Count One. With the disappearance of Count One, there would be no enterprise the defendants carried out in common. In consequence, instead of charging defendants with a single RICO conspiracy, Count Two would be "duplicitous" because it charges multiple conspiracies in a single count. The claim is that Simon did not knowingly participate with his alleged coracketeers in a unified conspiracy (a wheel with a rim as well as a hub and spokes). If so, Simon's argument continues, whatever the correct disposition of Count Two, Counts Nineteen through Twenty–Three—the counts that derive from the original indictment against him—are misjoined as a matter of law, under Fed.R.Crim.P. 8(b), with the rest of the indictment, because they are not part of the "same series of acts or transactions," as Rule 8(b) requires. The consequence would be that Simon's trial must be severed.[10]

## II. *Analysis of Count One*

■ Rule 8(b) provides that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or the same series of acts or transactions constituting an offense or offenses." As is well known, the strictures of Rule 8(b) are loosened when a conspiracy, especially a RICO conspiracy, is alleged:

> The limitations on the government's charging power imposed by [Rule 8(b)] are largely eliminated when a conspiracy is alleged. The mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants must have engaged in the same series of acts or transactions constituting an offense. The presence of a substantive RICO count under 18 U.S.C. § 1962(c), and of a RICO conspiracy count under 18 U.S.C. § 1962(d), further broadens the government's power to charge multiple defendants together. A RICO charge under § 1962(c) necessarily incorporates allegations that each of the defendants named was associated with or employed by the same enterprise, and participated in the enterprise by engaging in at least two acts of racketeering related to the enterprise. In short, by loosening the statutory requirements for what constitutes joint criminal activity, Congress limited the force of Rule 8(b) in such situations.

*Castellano*, 610 F.Supp. at 1396.

Simon recognizes that the well-settled principles lucidly stated by Judge Sofaer pose a nearly insuperable obstacle to his claim that he is misjoined in this Indictment under Rule 8(b): "[W]e start with what this Court has recognized and face up to it: ordinarily, the charge of a conspiracy to commit RICO and the allegations that defendants "knowingly" agreed are sufficient to overcome a contention that there should be a severance because of misjoinder." Si-

---

**10.** The above is the clearest argument this Court can extract from Simon's presentation, which jumps back and forth between discussion of Rule 8(b), substantive RICO law, and duplicity.

For example, Simon seems confused about exactly how he would have this Court evaluate Counts 1 and 2. The quotation from his "syllogism" suggests that they fail to state a substantive RICO charge against him, but he also seems to suggest that he is improperly *joined* in Counts 1 and 2. *See* Simon Memo of Law 15–16 ("Unless there be proof that Mr. Simon joined the RICO enterprise knowing that its scope went beyond himself ... the RICO count would fail as a substantive count and, at the same time, would not satisfy the joinder requirement of involving the same series of transactions under Fed.Cr.R. 8(b)."). This is, at best, too compressed. If Count 1 had to be dismissed, Simon's argument would have to be that the underlying *predicate acts* charged against him, expressed as independent counts, are misjoined with the predicate acts, expressed as independent counts, charged against the other defendants, because there is no enterprise remaining to tie them together.

Similarly, in discussing Count 2 Simon seems to confuse duplicity, which is the charging of two or more distinct crimes against a *single* defendant in violation of Fed.R.Crim.P. 8(a), *see* 8 J. Moore, *Moore's Federal Practice* ¶ 8.03[1] (1987), with misjoinder, the joinder of two or more insufficiently related defendants in violation of Fed.R.Crim.P. 8(b).

mon Memo of Law at 19. Nonetheless, Simon relies on *Castellano* for the proposition, on which he ultimately stakes his entire motion, that a RICO defendant such as he is improperly joined unless the indictment alleges that he knows that the enterprise's "scope went beyond himself and generally where the indictment says it went." [11]

Simon says that there are three exceptions to the general principle that joinder of defendants in a RICO indictment is almost automatically proper.[12] The first, which he declines to invoke, is prosecutorial bad faith. The third, which he claims that the District Courts of the Second Circuit have fashioned especially for RICO cases, is requiring the Government to make an offer of proof.[13] The second, on which Simon's motion stands or falls, is prosecution on a theory of joinder known to be insufficient. *Castellano*, 610 F.Supp. at 1397.

Simon's argument is that the Government is prosecuting on the mistaken theory that individuals can be joined in a RICO indictment without knowing "what the others [in the racketeering enterprise] were

---

**11.** Simon Memo of Law 15. Simon submitted his papers to this Court before Chief Judge Weinstein of the Eastern District of New York filed his most recent opinion in *United States v. Gallo*, 668 F.Supp. 736 (E.D.N.Y.1987). Faced with an argument identical to Simon's, complete with wheels, hubs, spokes, rims, and chains, Judge Weinstein went even further than Judge Sofaer, seemingly holding that *as a matter of law* a RICO indictment meets Rule 8(b)'s joinder requirements:

> If we were to apply pre-RICO concepts of conspiracy to this case, we would likely find that a single overarching conspiracy could not be charged based on these allegations. The traditional theoretical concepts of conspiracy, particularly as evolved in the "wheel" and "chain" concepts, do not adapt well to the vast, elaborate, and diversified operations of the sort found in organized crime families and narcotics networks. As Judge Friendly noted, when applied to the long-term operation of an illegal business, "the common pictorial distinction between 'chain' and 'spoke' conspiracies can obscure as much as it clarifies." ...
>
> With the enactment of RICO, Congress supplemented traditional "chain" and "wheel" theories with a new conspiratorial concept— the enterprise.... This new notion furnishes prosecutors a much broader scope of authority for joining defendants who are alleged to have participated in a common grouping or association.... The "gravamen" of this kind of conspiracy is the agreement on the "overall" objective, namely, to participate in the affairs of the enterprise.... Joinder under Rule 8(b), therefore, is automatically authorized simply through the RICO conspiracy charge, which supplies the "sufficient nexus" to tie the various defendants and the diverse predicate offenses together.... The limitations on the prosecution's power to charge are virtually eviscerated by the RICO conspiracy device.

*Gallo*, at 747 (citations omitted). Although this Court fully agrees with Judge Weinstein's analysis, which is sufficient to dispose of Simon's Rule 8 motion, it is important to show how Simon's extreme reliance on *Castellano* is misplaced.

**12.** Actually, Simon splits one of these exceptions into two, and ignores another. *United States v. Sutherland*, 656 F.2d 1181, 1191 (5th Cir.1981), noted exceptions "where the prosecution is shown to have acted in bad faith" and "where the government's indictment under a single count was from the outset based on an improper interpretation of the law." If the second *Sutherland* exception refers to the substantive criminal law, Simon does not invoke it. *Castellano* noted a bad faith exception, explaining that in the Second Circuit "the government acts in good faith unless it knowingly relies on a theory of joinder which has previously been held insufficient, or acts without 'a reasonable expectation that sufficient proof will be forthcoming at trial.'" 610 F.Supp. at 1397 (citation omitted). The first *Castellano* factor is Simon's second factor; the second is, perhaps, straightforward bad faith, possibly the first Simon factor.

**13.** There is obvious confusion here. The alleged tendency toward requiring an offer of proof from the Government is not a principle of criminal procedure that determines whether joinder is proper; it is a device to elicit information to enable a court to apply the principles of criminal procedure relating to joinder. If a court finds that the Government has joined defendants in bad faith or according to a mistaken theory of joinder, Rule 8(b) requires the remedy of severance. If a court requires the Government to make an offer of proof, it will impose a severance only if the proof reveals a violation of Rule 8(b), or prejudice sufficient to endanger a fair trial, justifying a discretionary severance under Rule 14. If there is no violation or prejudice, there should be no severance.

Thus, Simon's third "exception" is no exception at all to the federal courts' policy of permitting liberal joinder in conspiracy and RICO cases.

doing in some overall way...." [14] Simon relies on *Castellano* for this claim as well, citing Judge Sofaer's holding that "RICO itself expressly requires that any defendant prosecuted under section 1962(c) must be shown to have been aware of at least the general existence of the enterprise named in the indictment." *Id.* at 1401. Judge Sofaer continued, in a passage quoted by Simon at length:

> Section 1962(c) expressly applies only to persons "employed by" or "associated with" an enterprise involved in interstate or foreign commerce. These phrases can only be given content in association-in-fact cases by a requirement that the government show, at a minimum, that the defendant was aware of the existence of a group of persons, organized into a structure of some sort, and engaged in ongoing activities, which the government can prove falls within the definition of enterprise contained in section 1961(4). In addition, section 1962(c) requires proof that the defendant "conduct[ed]" or "participate[d], directly or indirectly, in the conduct of the enterprise's affairs...." This choice of words also reflects a view of the defendant as aware of the existence of the named enterprise, since it requires a particular kind of connection between the defendant's behavior and the enterprise's affairs.

*Id.*

Simon asserts that this passage imposes a requirement that "there be proof that Mr. Simon joined the RICO enterprise knowing that its scope went beyond himself and generally where the indictment says it went," Simon Memo of Law 15, that he must have "known what the others were doing in some overall way (if not in detail)," *id.* 17, or that he "must have known that others were also agreeing to violate RICO," *id.* 18. These vague phrases are useless in determining what, on Simon's view, he had to know to be properly indictable on the RICO counts, and the remainder of Simon's Memo of Law offers no better guidance. The Nessen Affidavit, however, does mark out "[a]t *least* six distinct schemes involving the other defendants [that] spring out of Count 1 of the Second Superseding Indictment and its sixteen alleged acts of racketeering." *Id.* ¶ 26. It is fair to infer that Simon is claiming that the Government must allege that he knew about at least one of these other "subconspiracies." [15] The Government, by contrast, argues that it need only show that Simon was aware of the corrupt enterprise itself, Wedtech, not necessarily of anybody else's participation in that enterprise through a pattern of racketeering activity. Government's Memorandum of Law in Opposition to the Defendant Simon's Motion for Severance ("Government Memo in Opposition") 10.

The statute that defines a substantive RICO offense, 18 U.S.C. § 1962(c), provides as follows:

**14.** Simon Memo of Law 17. This Court assumes that Simon means *"knowingly* prosecuting," as is required for a showing of bad faith in the Second Circuit. *See Castellano,* 610 F.Supp. at 1397 (citing cases). The burden of proof of bad faith in this sense, incidentally, is on the defendant, making Simon's demand that the Government prove its good faith by making an offer of proof that much less compelling. *See, e.g., United States v. Luna,* 585 F.2d 1, 4 (1st Cir.), *cert. denied,* 439 U.S. 852, 99 S.Ct. 160, 58 L.Ed.2d 157 (1978).

**15.** Simon's continual references to *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), and its celebrated image of a conspiracy as a wheel that requires a rim to bind its spokes together indicate that he regards the "subconspiracies" as spokes and knowledge of the "subconspiracies" as the rim. Such casual reliance on *Kotteakos* is misplaced. As Judge Keenan observed in *United States v. Persico,* 621 F.Supp. 842 (S.D.N.Y.1985), "*Kotteakos* arose under the general conspiracy statute, 18 U.S.C. § 371, while this case is brought under RICO. A RICO conspiracy is substantially broader than an ordinary § 371 conspiracy." *Id.* at 856.

Moreover, Simon cannot, as he admits, be claiming that he has to be shown to have known about all the details of the RICO scheme. This is not even a requirement in non-RICO conspiracy cases. *See Blumenthal v. United States,* 332 U.S. 539, 556–57, 68 S.Ct. 248, 256–257, 92 L.Ed. 154 (1947) (knowledge of "essential nature of the plan" sufficient); *United States v. Elliott,* 571 F.2d 880, 903 (5th Cir.1978) ("a party to a conspiracy need not know the identity, or even the number, of his confederates") (quoting *United States v. Andolschek,* 142 F.2d 503, 507 (2d Cir. 1944).

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

From the statute, the authors of a prominent treatise on federal jury instructions drew the following list of elements of a § 1962(c) offense:

1. That an enterprise existed;

2. That the enterprise affected interstate or foreign commerce;

3. That the defendant was associated with or employed by the enterprise;

4. That the defendant conducted or participated in the affairs of the enterprise; and

5. That this conduct or participation by the defendant was through a pattern of racketeering activity.

L. Sand, J. Siffert, W. Loughlin & S. Reiss, *Modern Federal Jury Instructions* § 52.04 at 52–35 (1984). *See* Government Memo in Opposition 10 (quoting instructions); *Castellano*, 610 F.Supp. at 1398 (same). Judge Sofaer's holding regarding these instructions in *Castellano*, on which Simon puts so much weight, was that the very meaning of such terms as "associate with," "conduct," and "participate in" implies an awareness of "at least the general existence of the enterprise," *id.* at 1401. In so holding Judge Sofaer rejected the Government's view in *Castellano* that it had to prove only the existence of the enterprise and the commission by the defendant of two acts of racketeering, constituting a pattern.

In the present case, there is no dispute that the enterprise is Wedtech, which, as a corporation, falls explicitly under the definition of "enterprise" in 18 U.S.C. § 1961(4).[16] It is not disputed that Wedtech had an effect on interstate commerce. Simon cannot dispute that all the Government need prove is that he was aware of the existence of Wedtech. The only questions are whether the predicate acts—Simon's allegedly extorting a job for his brother-in-law and his alleged extortion of $50,000 in cash and favors from Wedtech—constitute control of or participation in Wedtech's affairs through a pattern of racketeering activity; whether Simon was associated with or employed by Wedtech; and whether, as a matter of substantive RICO law, Simon had to know about others' Wedtech-related corrupt activities for his actions to constitute predicate acts.

First, it is clear that Simon's predicate acts meet the definition of "pattern of racketeering activity" at 18 U.S.C. § 1961(5). Both were racketeering activities under 18 U.S.C. § 1961(1)(A) (acts involving extortion), and both were committed within ten years of each other and after the effective date of RICO.

Second, Simon's activities would seem to constitute participation in the affairs of Wedtech through this pattern of racketeering activity—even to rise to the level of conduct of those activities:

> We think that one conducts the activities of an enterprise through a pattern of racketeering when (1) one is enabled to commit the predicate offenses solely by virtue of his position in or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise. Simply committing predicate acts which are unrelated to the enterprise or one's position within it would be insufficient.

*United States v. Scotto*, 641 F.2d 47, 54 (2d Cir.1980). Here, Simon's alleged procurement of a job for Bittman was certainly related to the activities of Wedtech. Moreover, that action, as well as the alleged

---

**16.** The Government seems to regard the fact that Wedtech is a corporation as sufficient to dispose of Simon's use of *Castellano*. It tries to distinguish *Castellano* by noting that that case involved an association in fact, not a corporation. Because Simon was not an officer, director, or stockholder of Wedtech, however, the question still arises how he conducted or participated in its activities, and the answer will come in terms of an association in fact between Simon and the corporation. Thus, this attempt to distinguish *Castellano* is too facile.

extortion of the $50,000 would have been impossible if Simon, by virtue of his position as Bronx Borough President, had not had control over the affairs of Wedtech.

Third, although Simon was, of course, not employed by Wedtech, his satisfaction of the "participation in or conduct of" requirement virtually automatically satisfies the "associated with" requirement. *See Alfaro v. E.F. Hutton Co.*, 606 F.Supp. 1100, 1116 (E.D.Pa.1985).

Thus, the Government has alleged against Simon all of the elements necessary for a substantive RICO offense. Necessarily, Simon was aware of the existence of Wedtech, and aware, to the extent of his own alleged participation in its affairs, that it was a corrupt enterprise. No more is needed to satisfy Judge Sofaer's "awareness" requirement. Judge Sofaer was concerned, in the lengthy passages quoted from *Castellano*, to refute the Government's contention that all it had to do to prove a RICO violation was to prove a pattern of racketeering activity: according to the Government in *Castellano*, this was itself sufficient to establish association and conduct or participation. Judge Sofaer's concern is highlighted by the rather far-fetched counterexamples to the Government's position that he presents in *Castellano*.[17] For Judge Sofaer, the commission of predicate acts that are only coincidentally or adventitiously connected with an enterprise is not enough to sustain a RICO indictment. Moreover, if one does not know about the existence of an enterprise, one's actions cannot be connected with it more than coincidentally. Thus, the "participation" and "association" requirements entail a general awareness of the existence of the enterprise, as Judge Sofaer concluded.

This, however, by no means entails that if the enterprise encompasses a number of other activities indictable under RICO one has to be aware of these activities to be aware of the enterprise. Only if one *identified* the enterprise with these "subconspi-

racies" would one imagine that Simon could be indicted for RICO violations only if he knew about some or all of the others. But there is no reason to do so. The enterprise at issue here is Wedtech, a corporation whose affairs were conducted, according to the Government, through a pattern of racketeering activity. Thus, the requirement Simon extracts from *Castellano* is satisfied here.

■ It is important to notice, moreover, that even if Simon's interpretation of *Castellano* were accurate, that would not establish that he is entitled to a severance. Failure to plead awareness of the existence of the enterprise, even if it vitiates a § 1962(c) count, is not enough to establish misjoinder under Rule 8(b). *Cf. Castellano*, 610 F.Supp. at 1396–97:

> Indeed, even if a defendant is not named in a conspiracy or RICO count, he may be charged in a separate count, in the same indictment, if he is alleged to have participated in the same series of acts or transactions that constituted the conspiracy or RICO offense, despite the fact that his participation may have been too limited to permit his being named as a co-conspirator or co-racketeer.

This suggests that even if Simon should convince this Court that Counts One and Two are improperly pleaded as to him, that would not by itself be a reason to sever Counts Nineteen through Twenty-Three. So long as those counts alleged that he participated in the same series of acts or transactions as did the coracketeers, Rule 8(b) would be satisfied, even if Simon had not been named in Counts One and Two at all. Our Court of Appeals has confirmed that "[v]irtually by definition," a RICO count "constitute[s] a 'series of acts or transactions' sufficiently intertwined to permit a joint trial of all defendants," *United States v. Bagaric*, 706 F.2d 42, 69 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983), and that "a construction of Rule 8(b) that required a

---

**17.** 610 F.Supp. at 1400 (under Government construction of RICO, hypothetical gang of bank officers engaged in laundering money would legitimate RICO indictment of cashier, ignorant of scheme, who handled bank transactions for officers; same result if cashier, with no knowledge of officers' enterprise, embezzles from bank, independently of officers, twice).

closer relationship between transactions than that necessary to establish a 'pattern of racketeering activity' under RICO might possibly prohibit joinder in circumstances where Congress clearly envisioned a single trial," *United States v. Weisman,* 624 F.2d 1118, 1129 (2d Cir.1980).

■ Thus, Simon's "syllogism" fails as a matter of logic. This Court finds, moreover, that it fails as a matter of fact as well: the charges against Simon are clearly closely related enough to the alleged activities of the other defendants to constitute part of the "same series of acts or transactions."

### III. *Analysis of Count Two*

■ Simon's contention that Count Two is duplicitous because it charges multiple conspiracies is easily dealt with. First, this issue is not suitable for pretrial disposition. As the court observed in *United States v. Persico,* 621 F.Supp. 842 (S.D.N.Y.1985):

> [T]he Second Circuit has repeatedly made clear that whether there is a single or multiple conspiracies is a "question of fact for a properly instructed jury," ... and is "singularly well-suited to resolution by the jury." ... If the government fails to establish the existence of the single conspiracy charged in the indictment, defendants may raise the issue at the close of the government's case or request a jury instruction on multiple conspiracies.

*Id.* at 857 (citations omitted). *See United States v. Orozco-Prada,* 732 F.2d 1076 (2d Cir.), *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984).

Simon contends, of course, that the Government actually is alleging multiple conspiracies that are misjoined, under cover of a single alleged conspiracy. This claim is refuted by our Court of Appeals's holding in *United States v. Ruggiero,* 726 F.2d 913 (2d Cir.1984):

> Nor does a RICO conspiracy under 18 U.S.C. § 1962(d), supported by predicate acts of racketeering activity that in themselves are conspiracies, violate the principle of *Kotteakos v. United States* .... A RICO conspiracy under

§ 1962(d) based on separate conspiracies as predicate offenses is not merely a "conspiracy to conspire" as alleged by appellants, but is an overall conspiracy to violate a substantive provision of RICO, in this case § 1962(c), which makes it unlawful for any person associated with an interstate enterprise to "participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

*Id.* at 923. Inasmuch as Part II of this opinion has sustained the Government's contention that Count One of the Indictment properly pleads the existence of a § 1962(c) racketeering enterprise, *Ruggiero* parallels the present case exactly. The most Simon's attack on Count Two can establish is that the various predicate acts are actually conspiracies to commit the predicate crimes. As in *Ruggiero,* the only conclusion to draw is that we are dealing with subconspiracies of an overall conspiracy to violate § 1962(c): "*Ruggiero* demonstrates that a RICO conspiracy is broader than a conspiracy to commit a particular crime." *Persico,* 621 F.Supp. at 841. Thus, the second prong of Simon's attack on the Indictment fails.

### IV. *Alleged Prejudice Resulting from Joinder*

■ Simon claims that even if, as this Court has held, he is not entitled to a severance as a matter of law under Fed.R. Crim.P. 8, this Court should grant a severance as a matter of discretion under Fed.R. Crim.P. 14, to avoid the prejudice that would result to Simon in a joint trial. There is a strong presumption in favor of joint trials of defendants jointly indicted, especially "[w]here, as here, the crime charged involves a common scheme or plan," *United States v. Girard,* 601 F.2d 69, 72 (2d Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). Therefore, the defendant has the burden of demonstrating "prejudice so substantial as to deny him a fair trial," *United States v. Cody,* 722 F.2d 1052, 1061 (2d Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 873 (1984); *United States v. Haim,* 218 F.Supp. 922, 931 (S.D.N.Y.1963),

and that burden is a "heavy" one, *United States v. Sotomayor*, 592 F.2d 1219, 1227 (2d Cir.), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 286 (1979); *see United States v. Werner*, 620 F.2d 922, 928 (2d Cir.1980). Although Simon claims that "the prejudice of a joint trial to Mr. Simon is palpable. You can almost slice it," Simon Memo of Law 25, most of Simon's allegations of prejudice fall entirely outside the scope of Rule 14. The prejudice Rule 14 seeks to mitigate is the possibility of an *unfair trial*. As Judge Weinfeld put it in a frequently quoted passage,

> The ultimate question on a motion for severance is: [W]hether, under all the circumstances of the particular case, as a practical matter, it is within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct. In sum, can the jury keep separate the evidence that is relevant to each defendant and render a fair and impartial verdict as to him? If so, though the task be difficult, severance should not be granted.

*United States v. Kahaner*, 203 F.Supp. 78, 81–82 (S.D.N.Y.1962) (Weinfeld, J.), *aff'd*, 317 F.2d 459 (2d Cir.), *cert. denied*, 375 U.S. 836, 84 S.Ct. 73, 11 L.Ed.2d 65 (1963). Thus, the fact that Simon will be forced, absent severance, to participate in a joint trial longer, even far longer, than a solo trial would have been is simply not a reason for severance under Rule 14—even if, as Simon alleges, he will be unable to practice his profession during the trial and thereby, perhaps, be reduced to penury. Only allegations that go to the fairness or unfairness of a joint trial are relevant to a Rule 14 motion.[18] Thus, Simon's allegation that he will be prejudiced because his codefendants are accused of extracting more than $5 million out of Wedtech, whereas he is accused of extorting no more than a few hundred thousand dollars, does go to Rule 14. Unfortunately, it is not a sufficient ground for severance. "[I]t is well established that 'simply because the evidence against codefendants is stronger or that one defendant's role in the crime is lesser than that of others is not sufficient reason to grant a severance.' " *United States v. Feola*, 651 F.Supp. 1068, 1124 (S.D.N.Y. 1987) (quoting *United States v. Potamitis*, 564 F.Supp. 1484, 1486 (S.D.N.Y.1983), *aff'd*, 739 F.2d 784 (2d Cir.), *cert. denied*, 469 U.S. 918, 105 S.Ct. 297, 83 L.Ed.2d 232 (1984)). Similarly, the claim that "Mr. Simon will be on trial with a sitting Congressman and the drama that goes with that," Simon Memo of Law 26, conceivably states a reason why Simon would be prejudiced by a joint trial—Congressman Biaggi's national stature may result in more intense media coverage of the trial than there would otherwise be, subjecting Simon to the blinding glare of reflected publicity. Such publicity, of course, would only be prejudicial if it is unfavorable to Simon, and this Court can scarcely be expected to predict the character that any media coverage of this case will have. Moreover, Simon can scarcely claim that a solo trial would be devoid of publicity, inasmuch as he stands indicted for acts he allegedly committed while one of the most powerful and best-known politicians in New York City. Indeed, this Court can see no other reason why John Mariotta would join Simon's motion for severance, claiming, as noted herein, that *he* would be prejudiced by a joint trial with *Simon*.[19] Finally, Simon claims that "The government has shown us a room-full of documents that it will pour out over Mr. Simon, the vast bulk of which has nothing to do with him." *Id.* If indeed most of the Government's evidence has nothing to do with Simon, it is the province of this Court to issue caution-

---

**18.** This Court does not disagree with Judge Weinstein, who in *United States v. Gallo* weighed many of the factors Simon cites and determined that they called for multiple severances. *Gallo*, at 749–758. In extraordinary cases such as *Gallo*, such factors may engender prejudice justifying a severance under Rule 14. This Court only holds that they do not do so in this case.

**19.** It is incidentally noteworthy that Mariotta does not move on his own to be severed from *Congressman Biaggi*.

ary instructions to the jury to prevent it from misapprehending the relevance of those documents. Simon presents no reason whatsoever to suppose that this Court is incapable of giving sufficiently curative instructions, or that the jury, which Simon will after all have a hand in selecting, will be unable to follow them. Relying on the established principle that "a general, unsupported claim of prejudice, as asserted by these defendants, is insufficient to warrant the severance of counts that are properly joined," *United States v. Haim*, 218 F.Supp. 922, 932 (S.D.N.Y.1963), this court declines to sever Simon's trial under Rule 14.[20]

### V. *Severance of Counts Twenty–One and Twenty–Three*

■ Finally, Simon maintains that Count Twenty–One, which charges him with extorting salary kickbacks from Ralph Lawrence, and Count Twenty–Three, which charges him with tax evasion, should be severed because they are unrelated to Wedtech and so cannot satisfy Rule 8(b)'s requirement that they arise from the "same series of acts or transactions" as the balance of the indictment.

Simon is mistaken as to the applicable law. He maintains that "when any defendant in a multiple defendant case challenges joinder of offenses, his motion is made under Fed.Cr.R. 8(b) rather than 8(a)." Simon Memo of Law at 28. However, the case Simon paraphrases here, *United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975), involved a defendant who alleged misjoinder of a conspiracy count in which he was not named with substantive counts in which he was named along with other defendants. Simon, unlike Papadakis, here attacks joinder of two counts, in which he alone is charged, to the remainder of the indictment, in which he and the other defendants are charged in varying combinations. In this situation, it is clear that Rule 8(a) applies.

*United States v. Isaacs*, 493 F.2d 1124, 1158 (7th Cir.) (per curiam) ("When multiple defendants are charged in the same as well as multiple counts, a challenge by a single defendant to joinder of offenses in which he is charged is governed by Rule 8(a)."), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3184, 41 L.Ed.2d 1146 (1974); *United States v. Clemente*, 494 F.Supp. 1310, 1315 (S.D.N.Y.1980) ("When a defendant in a multiple defendant case named in one count seeks to sever other counts in which he alone is charged, Rule 8(a) controls."). *See United States v. Feola*, 651 F.Supp. 1068, 1120 (S.D.N.Y.1987) (providing Rule 8(a) analysis of motion for severance of weapons counts, in which only one defendant was named, from drug counts in which that defendant was named with others).

Rule 8(a) requires only that the offenses joined against one defendant be "of the same or similar character or ... based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." In response to an Order of this Court dated September 9, 1987, the Government submitted an affidavit explaining its view of the relation between Count Twenty–One, Simon's alleged extortion of Ralph Lawrence, and the rest of the indictment. The Government will contend that "Lawrence ... acted as Simon's courier for the receipt of illegal Wedtech payments" and that "Lawrence acted as Simon's co-conspirator in that regard." Affidavit of Mary T. Shannon ¶ 8, at 7. The Government also claims, as Count Twenty–One charges, that "Lawrence himself was extorted by Simon." *Id.* Unquestionably, these are alleged crimes of "the same or similar character" as those with which Simon is charged in Counts Nineteen and Twenty, extortion of kickbacks from Wedtech in the form of a job for his brother-in-law and of cash and other favors. In con-

---

**20.** Of course, exactly the same considerations apply to Mariotta's application to join Simon's motion. Indeed, Mariotta has presented no grounds at all to believe that he will be preju-diced by a joint trial with Simon. The motion to sever is, accordingly, denied as to Mariotta as well.

sequence, Count Twenty-One is properly joined under Rule 8(a).[21]

Similarly, the Government argues that Count Twenty-Three is properly joined in the indictment, citing *United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir.1977), *cert. denied*, 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978), for the proposition that joinder of tax evasion counts that deal with a single year is proper under Rule 8(a). Simon's reply is that his motion for severance of Count Twenty-Three, or at least that portion that relates to tax evasion on income allegedly acquired from Fogliano, is governed by Rule 8(b). Because, as has been explained, Simon is mistaken in this contention, and because he presents no other reason why this Court should not follow *McGrath*, we hold that Count Twenty-Three is properly joined under Rule 8(a).

## CONCLUSION

In summary, this Court denies Simon's motion to require the Government to make an offer of proof, noting that he has, and has not met, the burden of showing why the Court should look beyond the face of the Indictment; we deny his motion to sever his trial under Rule 8, holding that the Government has sufficiently pleaded his knowing participation in a RICO enterprise; we deny his motion for discretionary severance under Rule 14, holding that however much he may be inconvenienced by a joint trial, he has not raised the possibility that a joint trial will be unfair to him, as Rule 14 requires; and we deny his motion to sever Counts Twenty-One and Twenty-Three, holding that they are properly joined under the applicable rule, Rule 8(a).

---

**21.** We need not address Simon's or the Government's contentions about the admissibility of Lawrence's testimony as probative of Simon's state of mind. It would seem that both the Government and Simon mistakenly presuppose that joinder of Count 21 is to be evaluated under Rule 8(b) rather than Rule 8(a).