**UNITED STATES of America**

v.

**Mario BIAGGI, Stanley Simon, Peter Neglia, John Mariotta, Bernard Ehrlich, Richard Biaggi, and Ronald Betso.**

**No. 87 Cr. 265 (CBM).**

United States District Court, S.D. New York.

Nov. 5, 1987.

---

James C. McKay, Independent Counsel, Washington, D.C. by Carol E. Bruce and Daniel J. Bussel, Associate Independent Counsel, for U.S.

Dominic F. Amorosa, New York City, for defendants.

## OPINION

MOTLEY, District Judge.

On July 13, 1987, defendant Richard Biaggi served a subpoena *duces tecum* pursuant to Fed.R.Crim P. 17(c) upon Independent Counsel James C. McKay, returnable November 9, 1987.[1] That subpoena demanded production of:

1. All documents and/or information in your possession or under your control relating to the possibility that things of value were furnished to Edwin Meese, the Attorney General of the United States, directly or indirectly, by representatives of the Wedtech Corporation, including Mr. Meese's lawyer, investment partner (and trustee) and former assistant, together with all documents and/or information relating to Mr. Meese's relationship to Wedtech, its employees, directors, consultants, officers, and nominees of any of these.

2. All documents and/or information with respect to whether Mr. Meese was given special intangible benefits or treatment through his association with Mr. Chinn.

3. All documents and/or information relating to all action taken by the Attorney General or any one of his representatives relating to the investigation of the case which led to my client's [Richard Biaggi's] indictment, while Mr. Meese was Attorney General, including Mr. Meese's refusal to disqualify himself from the Wedtech case.

4. All documents and/or information relating [*sic*] Mr. Meese's awareness

1. Independent Counsel McKay was appointed, in accordance with 28 U.S.C. §§ 49 and 593, by a special division of the United States Court of Appeals for the District of Columbia Circuit on February 2, 1987. His mandate was to investigate allegations involving the relationship between the Wedtech Corporation and Franklyn C. Nofziger. On May 11, 1987, Independent Counsel McKay accepted a referral from the Department of Justice, pursuant to 28 U.S.C. §§ 592(e) and 594(e), of the question whether federal criminal law was violated by the relationship of Attorney General Edwin Meese III with Wedtech, Mr. Nofziger, E. Robert Wallach, W. Franklyn Chinn, and Financial Management International, Inc. On August 19, 1987, the Court of Appeals for the District of Columbia Circuit issued an order specifying that the Independent Counsel's mandate included the investigation of any violation of federal criminal law by Attorney General Meese. The Independent Counsel and his staff have received parallel appointments from the Department of Justice.

that his investment trustee, Mr. Chinn, had a financial interest or connection to Wedtech.

The Independent Counsel moves under Fed.R.Crim.P. 17(c) to quash the subpoena. For the reasons set forth below, this court grants the motion.

*Allegations Against Richard Biaggi*

Part of the background of this case is set out in this court's opinion in *United States v. Biaggi*, 672 F.Supp. 112 (S.D.N.Y.1987), familiarity with which is assumed. Defendant Richard Biaggi is the son of Congressman Mario Biaggi, also a defendant in this case, and has been indicted on charges of violating the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c); *see* Indictment, Count One), of RICO conspiracy (18 U.S.C. § 1963(d); *see* Indictment, Count Two), bribery and receipt of an unlawful gratuity (18 U.S.C. § 201(c); *see* Indictment, Counts Four and Five), mail fraud (18 U.S.C. § 1341; *see* Indictment, Count Six and Thirteen), and perjury (I.R.C. § 7206(1); *see* Indictment, Counts Sixteen and Seventeen). The substantive acts Richard Biaggi is alleged to have committed are: (1) receiving 2½%, some 112,000 shares, of Wedtech stock, allegedly extorted by his father in exchange for maintaining the Small Business Administration's support of Wedtech; (2) participating in a fraudulent stock purchase scheme designed to maintain the appearance that defendant John Mariotta owned more than 50% of Wedtech's stock, qualifying it as a minority business enterprise eligible for contracts awarded under the SBA's Section 8(a) program; and (3) false statements on his 1983 and 1985 tax returns.

Rule 17(c) allows the district court to quash a subpoena *duces tecum* if it is "unreasonable or oppressive." The decision to quash rests within the court's sound discretion. *E.g., In re Irving (United States v. DiLapi)*, 600 F.2d 1027, 1034 (2d Cir.), *cert. denied,* 444 U.S. 866, 100 S.Ct. 137, 62 L.Ed.2d 89 (1979). The party seeking production has the burden of proof of showing that production would not be un-

reasonable or oppressive. *Id.* The Supreme Court has approved a fourfold test:

> [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699–700, 94 S.Ct. 3090, 3103, 41 L.Ed.2d 1039 (1974) (footnote omitted) (citing *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y.1952) (Weinfeld, J.).

The Independent Counsel maintains that defendant has not made a showing of relevance. For defendant's first, second, and fourth requests, it takes no effort to see the cogency of the Independent Counsel's view. These requests all relate to items of information that would tend to show that Attorney General Meese was involved in the affairs of Wedtech, as the Indictment alleges defendant is. If such items exist, however, they tend at most to implicate the Attorney General, not to exonerate defendant. This court declines, of course, to speculate on the guilt or innocence of the Attorney General as to Wedtech-related allegations. It is sufficient to note that the Attorney General's guilt would be entirely compatible with defendant's guilt. It would even be consistent, for example, with the hypothesis that defendant and the Attorney General were coracketeers.

Defendant's third request at least implies a colorable connection between himself and the Attorney General. Again, the Attorney General's relation, if any, to the Wedtech investigation has no bearing on whether defendant violated the law. But as the Independent Counsel puts it, "At best, the information demanded could be relevant to a claim by Mr. Biaggi that some complex

conspiracy was initiated by which Mr. Meese had charges trumped up against Mr. Biaggi in order to deflect the ongoing investigation into Wedtech away from himself." Memorandum in Support of Independent Counsel's Motion to Quash 11. Indeed, defendant's reply memorandum sketches such a conspiracy theory, according to which the four Wedtech cooperators

> are attempting to frame Richard Biaggi and his father, while at the same time protecting the major source of their illegally obtained Government contracts, the former Counsel to the President and current Attorney General, his lawyer, E. Robert Wallach, his former assistant, James E. Jenkins, and his current partner, W. Franklin Chinn.

Memorandum of Law in Opposition to Motion to Quash 1–2. In pretrial motions to dismiss the indictment or disqualify the Department of Justice from participating in this case, defendant offered a similar theory that even advanced an argument for the incompatibility of the Attorney General's guilt and defendant's:

> [T]he conviction of the Biaggis will mean in the eyes of many that the Attorney General was not bribed. The logic behind this suggestion is that if the Attorney General was bribed, and was on the indirect payroll of Wedtech for which he intervened to secure millions of dollars in Government contracts, it would have been irrational and unnecessary to bribe the Biaggis.

Memorandum of Law in Support of the Pretrial Motions of the Defendant, Richard Biaggi 21–22.

█ Thus, the theory is that the Wedtech cooperators are falsely inculpating defendants and exculpating the Attorney General, and that the Justice Department has chosen to believe them. Defendant presents no evidence whatsoever for these hypotheses, however. The claim that the Wedtech cooperators are *falsely* implicating the Biaggis is only credible if the Biaggis can produce evidence of their innocence; an inquiry into the Attorney General's role, if any, in the Wedtech investigation is irrelevant to such evidence, just as defendant's

first, second, and fourth requests were. The argument that if the Wedtech coracketeers had the Attorney General in their pocket, it would be irrational for them to bribe the Biaggis is unpersuasive. First, it does not *prove* that if the Attorney General is guilty, the Biaggis are innocent. It asserts only that it would be irrational for Wedtech to bribe the Biaggis under these circumstances, a debatable assertion for which defendant offers no support. Moreover, it ignores the fact that the Government has presented a perfectly good reason for Wedtech to bribe the Biaggis—the allegation that Mario Biaggi extorted money from Wedtech as a condition of maintaining his support for Wedtech's Section 8(a) status. Nowhere does defendant maintain that this status was not crucial to Wedtech's very existence. Even if this court were to believe defendant's theory, sketchy as it is, that it was the Attorney General who obtained millions of dollars in contracts for Wedtech, defendant nowhere suggests how the Attorney General could have continued to favor Wedtech if it were to lose its Section 8(a) status. That is, even if everything were as defendant says it is, Wedtech could still have a powerful reason to accede to threats from Representative Biaggi.

### Conclusion

This court finds that defendant is so far from establishing the relevance of the requested material that there is no need even to consider the Independent Counsel's argument that his inquiry, which is manifestly of the highest public importance, would be diverted from its object and disrupted if he were forced to comply with the subpoena. Defendant has not even made plausible, let alone established, the proposition that the doings of the Attorney General have any bearing on defendant's guilt or innocence. This court accordingly grants the Independent Counsel's motion to quash the subpoena.