**UNITED STATES of America, Appellee,**

v.

**John McGRATH, Defendant-Appellant.**

**No. 1282, Docket 77-1064.**

United States Court of Appeals,
Second Circuit.

Argued May 13, 1977.
Decided July 19, 1977.

---

Leonard J. Meiselman, Mineola, N.Y. (John J. Reilly, Meiselman, Boland, Reilly & Pittoni, Mineola, N.Y., of counsel), for appellant.

Stanley A. Teitler, Asst. U. S. Atty., E. D. N.Y., Brooklyn, N.Y. (David G. Trager, U. S. Atty., Bernard J. Fried, Stanley Marcus, Asst. U. S. Attys., E. D. N.Y., Brooklyn, N.Y., of counsel), for appellee.

Before CLARK, Associate Justice,* and LUMBARD and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

After a trial in the Eastern District of New York, before Judge Bramwell and a jury, appellant was convicted of three violations of the Hobbs Act, 18 U.S.C. § 1951, five counts of tax evasion, 26 U.S.C. § 7201, and five counts of filing false tax returns, 26 U.S.C. § 7206. He received concurrent sentences of a year and a day on the three Hobbs Act convictions. Judge Bramwell also imposed a fine of $5,000, and assessed McGrath the costs of the prosecution, $8,662.75. On this appeal, McGrath challenges the sufficiency of the indictment, the joinder of offenses and a number of Judge Bramwell's evidentiary rulings.

We affirm.

*The Facts.*

From the mid-1950s until his retirement in 1974, John McGrath was the Park Maintenance Supervisor of the Long Island State Park Commission, an agency of the State of New York. The Commission exercises jurisdiction over the state parks located on Long Island, as well as the Southern State Parkway, a major east-west highway on Long Island.[1]

As part of his official duties, McGrath awarded contracts to tow truck operators to remove disabled cars from the Southern State Parkway. The indictment charged McGrath with extorting illegal payments from five tow truck operators in return for parkway towing contracts, in violation of the Hobbs Act.[2]

McGrath did not report the income he received from his extortionate venture, thereby providing a basis for charges of tax evasion and filing false and fraudulent returns. In addition, the government proved that McGrath failed to report interest income on several bank accounts, capital gains and mortgage payments received from a purchase money mortgage on the sale of a house, as well as rental income from two houses on Fire Island. After McGrath was informed that he was the subject of an investigation by the Internal Revenue Service, but before indictment, he filed "amended" tax returns for every year from 1969 to 1973. These showed the income from his real estate investments and bank accounts, but not the proceeds of his extortion. The jury convicted him on the tax evasion and false filing counts and on three extortion counts. McGrath was acquitted on the remaining two extortion counts.

*The Indictment.*

The indictment, as originally filed, charged McGrath with extorting payments in his capacity as an employee of the "Long Island State Parks and Recreation Commis-

---

* Mr. Justice Clark died on June 13, 1977, before this case could be decided. The appeal is being decided, pursuant to 2d Cir. R. § 0.14, by Circuit Judges Lumbard and Meskill, who are in agreement.

1. The powers and duties of the Long Island State Parks and Recreation Commission are set out in N. Y. Parks & Rec. Law § 7.01 *et seq.* (McKinney 1976). The Commissioners also serve as the board of the Jones Beach State Parkway Authority, N.Y. Pub. Auth. Law § 152 (McKinney 1970), which in turn controls the Southern State Parkway.

2. 18 U.S.C. § 1951(a) provides:

Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

sion." Since 1972, that has been the official name of McGrath's employer. Before that time, it was officially known as the "Long Island State Park Commission." There is no dispute that McGrath's duties and authority were the same before and after the change in official titles.

After the jury was empanelled and both sides made opening statements, McGrath moved to dismiss the indictment because of the variation in the names of the Commission. Judge Bramwell then adjourned the trial. During the adjournment, the government reconvened the Grand Jury, which amended the indictment to show the correct official names of the Commission. The trial was then resumed. The major thrust of McGrath's appeal is his contention that the Grand Jury was powerless to make the change.

Innumerable cases have allowed amendment by the Court or the prosecutor without Grand Jury action, under circumstances similar to those of the instant case. *See e.g., United States v. Cirami,* 510 F.2d 69 (2d Cir.), *cert. denied,* 421 U.S. 964, 95 S.Ct. 1952, 44 L.Ed.2d 451 (1975) (appellants, rather than corporation of which they were officers, stated to owe tax); *Heisler v. United States,* 394 F.2d 692 (9th Cir.), *cert. denied,* 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed.2d 448 (1968); *Dye v. Sacks,* 279 F.2d 834 (6th Cir. 1960) (misdescription of robbery victim's name); *Williams v. United States,* 179 F.2d 656 (5th Cir. 1950), *aff'd,* 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951) (misnamed co-defendant and employer for which crime was committed); *United States v. Denny,* 165 F.2d 668 (7th Cir. 1947), *cert. denied,* 333 U.S. 844, 68 S.Ct. 662, 92 L.Ed. 1127 (1948) (name of defend-

ant misspelled); *Del Piano v. United States,* 240 F.Supp. 687 (E.D.Pa.1965) (indictment charged robbery of bank insured by FDIC, which was actually insured by FSLIC), *rev'd on other grounds,* 362 F.2d 931 (3d Cir. 1966). *See also United States v. Dawson,* 516 F.2d 796, 800–804 (9th Cir.), *cert. denied,* 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975).

Inasmuch as a ministerial change of this nature can be made by the court or the prosecutor, it can certainly be made by the Grand Jury, as was done here.[3] C. Wright, 1 Federal Practice and Procedure § 127 (1969). McGrath suffered no prejudice from the misnomer. The original indictment fully informed him of the crime charged and the need to prepare a defense, and it would have enabled another court to determine the charge for double jeopardy purposes. When the indictment was amended, none of his rights was affected by the change, and the burden of his defense was not increased. We reject the appellant's invitation to return to the arid formalism of common law pleading. *See Williams v. United States,* 341 U.S. 97, 102–104, 71 S.Ct. 576, 95 L.Ed. 774 (1951).[4]

Moreover, McGrath's objection came too late. Fed.R.Crim.P. 12(b) provides, in relevant part:

Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution; or

---

**3.** None of the cases cited by appellant supports his contention that an indictment may not be amended by the Grand Jury. Indeed, the cases upon which he relies imply that the Grand Jury may amend. *See Ex Parte Bain,* 121 U.S. 1, 8, 10, 7 S.Ct. 781, 30 L.Ed. 849 (1887); *Stirone v. United States,* 361 U.S. 212, 215–16, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *United States v. Consolidated Laundries Corp.,* 291 F.2d 563, 571–72 (2d Cir. 1961). The principal justification for barring amendment by the court or prosecutor is the possibility that the Grand Jury might have voted no bill on the amended

facts. When the amendment is made by the Grand Jury, this danger does not exist.

**4.** McGrath also complains that he was indicted and convicted for extorting money from "Russo Brothers Service Station, Inc." rather than "Russo Brothers Service Center, Inc.," its true name. Although no attempt was made by the government to correct the name, the appellant cannot show any prejudice from this trivial technicality.

(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings).

Despite the fact that his motion came within the clear language of the rule, McGrath insists that the variance is "jurisdictional," and thus could be raised at any point in the proceedings under Rule 12(b)(2).

▇▇▇ The exception in that rule applies only to motions directed to subject matter jurisdiction. *Sewell v. United States*, 406 F.2d 1289, 1292 (8th Cir. 1969); 8 Moore's Federal Practice ¶ 12.03[1] (1976). There is no merit to the appellant's claim that this "defect" in the indictment is jurisdictional.[5] *United States v. Isaacs*, 493 F.2d 1124, 1141 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

*Joinder.*

McGrath made a timely motion under Fed.R.Crim.P. 14 to sever the tax counts from the Hobbs Act violations. McGrath claims that Judge Bramwell's denial of that motion constituted reversible error.

▇▇▇ Multiple trials are unfair to both the government and the accused. A prosecution is expensive and time-consuming, for the government and the court. The defendant is put to the expense and embarrassment of two or more trials. Accordingly, Fed.R.Crim.P. 8 provides a liberal standard for joinder. In relevant part, the rule provides:

(a) Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Judged by that standard, joinder of the tax evasion and Hobbs Act counts was proper.[6] *United States v. Roselli*, 432 F.2d 879, 900–902 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971). *See United States v. Isaacs*, 493 F.2d 1124, 1159 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974) (Travel Act). The same is true of the joinder of the false declaration and tax evasion counts. *United States v. Sweig*, 441 F.2d 114, 118 (2d Cir.), *cert. denied*, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971).

▇▇▇ A motion for severance of properly joined offenses is addressed to the sound discretion of the trial judge.[7] McGrath is unable to point to any prejudice flowing from the single trial. Since the proof at separate trials would largely overlap, judicial economy was served by a single trial, with no sacrifice of appellant's rights.

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the government intends to introduce in evidence at the trial.

The advisory committee on the Rules made the following comment on Rule 14:

This rule is a restatement of existing law under which severance and other similar relief is entirely in the discretion of the court.

---

5. McGrath's argument proves far too much. It makes all objections to indictments jurisdictional, and thus would render Rule 12 a nullity.

Furthermore, it is clear that the indictment charges a violation of the Hobbs Act. Every element of the crime is spelled out in the indictment, which is undeniably sufficient on its face. Thus, the defect does not fall within the scope of the second exception of Rule 12(b)(2). *See United States v. Chestnut*, 533 F.2d 40 (2d Cir.), *cert. denied*, 429 U.S. 829, 97 S.Ct. 88, 50 L.Ed.2d 93 (1976).

6. Because the tax counts each deal with a single year, it would have been impossible to split the tax counts into those related and unrelated to the Hobbs Act violations.

7. Severances are governed by Fed.R.Crim.P. 14, which provides:

Judge Bramwell's decision not to grant the severance must be upheld.

*Foley's Hearsay Testimony.*

■ One of the tow truck operators allegedly victimized by McGrath was Victor LaGuardia. Before the Grand Jury, LaGuardia testified that he had no knowledge of McGrath's extortionate scheme. After this testimony, he was indicted for perjury. When called at trial he testified that he had made extortionate payments from 1968 to 1973, and admitted to perjuring himself before the Grand Jury. Defense counsel then engaged in a vigorous cross-examination intended to show that LaGuardia's testimony was recently fabricated in order to gain leniency in his perjury prosecution.

In rebuttal, the government called a friend of LaGuardia, Joseph Foley, who had managed a service station on the parkway. Foley had lost his job after a criminal conviction and was seeking parkway employment. He testified that LaGuardia told him that this could be arranged, but that a $10,000 bribe for McGrath was necessary. This conversation took place before LaGuardia's Grand Jury appearance. McGrath now claims that Foley's testimony was not relevant to any of the issues at trial, and was so prejudicial and inflammatory as to deny him a fair trial.

This testimony was admissible under Fed. R.Evid. 801(d)(1)(B) as a prior consistent statement offered to rebut a charge of recent fabrication. *United States v. Lombardi,* 550 F.2d 827 (2d Cir. 1977); *United States v. Zito,* 467 F.2d 1401, 1404 (2d Cir. 1972); *United States v. Iaconetti,* 406 F.Supp. 554, 558 (E.D.N.Y.) (Weinstein, *J.*), *aff'd on other grounds,* 540 F.2d 574 (2d Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). Judge Bramwell clearly did not abuse the wide discretion given to trial judges in making evidentiary rulings. *See United States v. Ravich,* 421 F.2d 1196 (2d Cir.), *cert. denied,* 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970). If the evidentiary ruling was erroneous, it would be harmless in any event. The possibility that McGrath was damaged by this testimony is negligible. McGrath was acquitted on the Hobbs Act count involving LaGuardia. While there is always the possibility of a "spillover" effect on the jury in its consideration of other criminal counts, that does not appear to have occurred here. The jury acquitted on another Hobbs Act count as well, demonstrating an ability to evaluate the evidence count by count. Thus, we conclude, beyond a reasonable doubt, that there could have been no improper prejudice from the admission of Foley's testimony.

We have carefully considered appellant's other arguments, and find them unworthy of discussion. The judgments of conviction are affirmed.