UNITED STATES of America

v.

Mario BIAGGI, Stanley Simon, Peter Neglia, John Mariotta, Bernard Ehrlich, Richard Biaggi, and Ronald Betso, Defendants.

No. 87 Cr. 265 (CBM).

United States District Court, S.D. New York.

Aug. 4, 1988.

Rudolph W. Giuliani, U.S. Atty., New York City by Edward J.M. Little, Mary T. Shannon, Howard Wilson, S. Alexander Planzos, Sp. Asst. U.S. Atty., for U.S.

LaRossa, Mitchell & Ross, New York City by James M. LaRossa, for defendant Mario Biaggi.

Kramer, Levin, Nessen, Kamin & Frankel, New York City by Maurice N. Nessen,

David Seide, Cecelia Loving–Sloane, for defendant Stanley Simon.

Kevin P. McGovern, Brooklyn, N.Y., for defendant Peter Neglia.

Skadden, Arps, Slate, Meagher & Flom, New York City by Jeffrey Glekel, David H. Hennessy, for defendant John Mariotta.

Kostelanetz, Ritholz, Tigue & Fink, New York City by Peter J. Driscoll, Catherine L. Redlich, for defendant Bernard Ehrlich.

Dominick F. Amorosa, New York City, for defendant Richard Biaggi.

Buchwald & Kaufman, New York City by Alan R. Kaufman, for defendant Ronald Betso.

## OPINION

MOTLEY, District Judge.

On July 20, 1988, before summations began in this case, defendant Stanley Simon moved for a mistrial in light of the recent decision by a panel of the Court of Appeals for the Second Circuit in *United States v. Turoff,* 853 F.2d 1037 (2d Cir.1988). Trial Transcript at 18415–18. That motion was denied, *id.* at 18602, for the reasons set forth below.

### I. *Background*

The Government's factual allegations and the evidence brought out at trial of this multidefendant case have been set out in three opinions, familiarity with which is assumed: *United States v. Biaggi,* 672 F.Supp. 112 (S.D.N.Y.1987); *United States v. Biaggi,* 675 F.Supp. 790 (S.D.N.Y.1987); and *United States v. Biaggi,* 705 F.Supp. 790 (S.D.N.Y.1988).

In the first of these opinions, this court denied defendant Simon's pretrial motions for severance. These included motions to sever Counts Twenty–One and Twenty–Three from the indictment. Count Twenty–One charged Simon with extorting one Ralph Lawrence, Simon's self-styled right-hand man, by giving him salary increases and forcing him to kick a portion of those increases back. Count Twenty–Three charged Simon with income tax evasion for the calendar year 1985. Simon's argument for severance was that these charges were not related to the other charges against him in the indictment, all of which involved his alleged participation in the affairs of the Wedtech Corporation through a pattern of racketeering activity, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1982 & Supp. IV 1987). Therefore, the argument continued, these counts could not meet the requirement of Fed.R.Crim.P. 8(b) that the offenses charged arise from "the same series of acts or transactions," and so must be severed.[1]

This court held that Simon was in error to argue that Rule 8(b) applied to his case, and that joinder was proper because Counts Twenty–One and Twenty–Three met the more liberal "offenses of the same or similar character" standard of Rule 8(a), which did apply.[2] The ground of Simon's motion for a mistrial is that *Turoff* shows that this court was mistaken; that Rule 8(b) rather than Rule 8(a) applies.

Having considered *Turoff,* this court concludes that this recent opinion provides no ground to reevaluate the denial of Simon's severance motions. In this court's view, *Turoff* does no more than restate the settled law of the Second Circuit on joinder under Rule 8, albeit in a broad enough fashion to permit a misconstruction according to which Rule 8(b) rather than Rule 8(a) applies to Simon's case. Of equal importance, not only is this court persuaded that

---

1. Fed.R.Crim.P. 8(b) provides, in relevant part: "Joinder of Defendants. Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."

2. Fed.R.Crim.P. 8(a) provides:

Joinder of Offenses. Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged ... are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Rule 8(a) remains the appropriate provision to apply to Counts Twenty–One and Twenty–Three; even if Rule 8(b) were to apply instead, those counts would still be properly joined in this indictment.

## II. The Decision in Turoff

*Turoff* involved the complicated activities of Jay Turoff, formerly chairman of the New York City Taxi and Limousine Commission. In bare outline and relevant part, Turoff and his coappellants appealed their convictions on Counts One and Thirteen of the indictment against them—conspiracy to commit mail fraud and conspiracy to commit tax fraud, respectively. Among other things, they argued that those conspiracy counts were misjoined. In affirming the judgments of conviction, the Second Circuit panel took the opportunity "to clarify the rules applicable to the joinder of multiple charges and multiple defendants in a single indictment," at 1042. The panel pointed out the familiar facts that Rule 8(a) governs joinder of offenses, whereas Rule 8(b) governs joinder of defendants, and that Rule 8(a) imposes the generally less stringent requirement on joinder that the joined offenses be "of the same or similar character." *Id.* at 1042. The panel went on to observe, correctly, that "Rule 8 does not explicitly provide a standard that governs when multiple offenses *and* multiple defendants are joined in one indictment." *Id.* at 1043. It then pointed out that "One logical approach would invoke Rule 8(a) when defendants seek severance of *offenses*, which is the case here, and Rule 8(b) when defendants seek severance of *defendants*, which is not this case." *Id.*

The logical approach, however, is not the one the Second Circuit has adopted, at least according to the panel:

> We have permitted multiple defendants facing multiple charges to move for either type of severance, but we invoke only Rule 8(b) to test the validity of joinder regardless of which type of severance is sought. As the district court recognized, our cases indicate that "when a defendant in a multiple-defendant case challenges joinder of offenses, his motion is made under 8(b) rather than

8(a)." ... The effect of construing Rule 8 in this fashion is that multiple defendants cannot be tried together on two or more "similar" but unrelated acts or transactions; multiple defendants may be tried together only if the charged acts are part of a "series of acts or transactions constituting an offense or offenses."

*Id.* (quoting *United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975)). After reciting policy reasons in favor of this approach, the panel held: "Thus, multiple defendants may be charged with and tried for multiple offenses only if the offenses are related pursuant to the test set forth in Rule 8(b), that is, only if the charged acts are part of a 'series of acts or transactions constituting ... offenses.'" *Id.* at 1043.

The phrase "multiple defendants ... charged with multiple offenses" is, however, ambiguous. It can refer to a situation in which defendants D and E, for instance, are jointly charged with offenses O and P, but D alone is charged with another offense Q. Substitute "Stanley Simon" for "D," and "Counts Twenty–One and Twenty–Three" for "Q," and we get *United States v. Biaggi*. Thus, it seems appropriate to call this situation a *Simon-style joinder*. But the phrase can also refer, perhaps more naturally, to a situation in which each of the multiple defendants are charged with the multiple offenses: in which both D and E are charged with both O and P. Because these were indeed the facts in *Turoff*, it seems appropriate to call this situation a *Turoff-style joinder*.

This ambiguity means that the holding quoted from *Turoff* admits of at least two interpretations. On a sweeping interpretation, *Turoff* would apply beyond its facts to Simon-style joinders. The result would be that Rule 8(a) *never* applies to joinder of offenses in a multiple-defendant case. On this view, so soon as the second defendant E is joined to the original defendant D, Rule 8(a) drops out and Rule 8(b) fills the void it leaves—even if the question is joinder of the offense Q against D alone, a

question that clearly would have been decided under Rule 8(a) before E was joined. We may call this sweeping interpretation the thesis of the primacy of Rule 8(b) over Rule 8(a), or the "primacy thesis." Simon's argument requires that the primacy thesis be correct.[3]

■ Limited to its facts, *Turoff* stands for the proposition that Turoff-style joinders—joinder of multiple offenses against multiple defendants *named in the same counts*—are to be evaluated under Rule 8(b) rather than 8(a). Only this narrower reading, in this court's view, is consistent with the decided cases of the Second Circuit. For the Second Circuit clearly recognizes that Simon-style joinders, at least when the party in Simon's position is the movant for severance, are governed by Rule 8(a), and thus are an exception to the primacy thesis. This means, however, that *Turoff* is irrelevant to the present case.

### III. *Count Twenty–Three*

■ It will be simplest to begin by examining the relevance, if any, of *Turoff* to Count Twenty–Three, the tax evasion count. The income for 1985 Simon is alleged to have failed to report has three components: (1) benefits from Wedtech; (2) kickbacks from Ralph Lawrence; (3) benefits from one Sabino Fogliano, a contractor and friend of Simon's who is alleged, among other things, to have done some $9,000 worth of uncompensated tile work on Simon's house. This court's original opinion on Simon's severance motion endorsed the Government's citation of a Second Circuit case that applied Rule 8(a) to the joinder of tax evasion counts with nontax counts—*United States v. McGrath*, 558 F.2d 1102, 1106 (2d Cir.1977), *cert. denied*, 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978). 672 F.Supp. at 125.

Simon's reply to the Government's argument was that at least the income allegedly derived from Fogliano was unrelated enough to the Wedtech charges against him that it should be governed by Rule 8(b). This reply purely and simply missed the point of the Government's citation of *McGrath* and this court's endorsement thereof. *Turoff* provides an occasion to clarify these points.

In *McGrath*, it was clearly appropriate to apply Rule 8(a), and there was no reason to apply a Rule 8(b) analysis, because there was only one defendant. *McGrath* held that it was proper under Rule 8(a) to join tax evasion counts with extortion counts, in a context in which the alleged extortion generated the income McGrath allegedly failed to report. The case *McGrath* cited for this proposition, however, *United States v. Roselli*, 432 F.2d 879 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971), *was* a Rule 8(b) case involving multiple defendants. *Roselli* took Rule 8(b) to imply that "so long as all defendants participate in a series of acts constituting an offense or offenses, the offenses and defendants may be joined even though not all defendants participated in every act constituting each joined offense." 432 F.2d at 899. It concluded that joinder of tax counts with nontax counts was permitted under Rule 8(b) because "the joint activity from which the unreported income was received constituted an offense or offenses in itself." *Id.* at 900. The teaching of *Roselli*, then, is that tax counts and nontax counts are properly joined under Rule 8(b) when the nontax counts charge illegal activity that generated the income that the tax counts allege is unreported. This teaching is amply reaffirmed by *Turoff:*

---

**3.** Whether correct or not, the primacy thesis or something like it is frequently expressed. *See, e.g., United States v. Eagleston*, 417 F.2d 11, 14 (10th Cir.1969); *Williamson v. United States*, 310 F.2d 192, 197 n. 16 (9th Cir.1962); *United States v. Roselli*, 432 F.2d 879, 899 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971); *United States v. Ostrer*, 460 F.Supp. 1388, 1390 (S.D.N.Y.1978); *United States v. Mandel*, 415 F.Supp. 1033, 1045 (D.Md.

1976); 1 C. Wright, *Federal Practice & Procedure: Criminal* § 144 at 494 ("It is firmly established in the case law that the propriety of joinder in cases where there are multiple defendants must be tested by Rule 8(b) alone and that Rule 8(a) has no application."); *id.* n. 1 (collecting cases). In this opinion this court finds, and need find, only that the primacy thesis is not, even in *Turoff*, the unequivocal view of the Second Circuit.

As the district court recognized, " 'tax counts can properly be joined with non-tax counts where it is shown that the tax offenses arose directly from the other offenses charged.' " ... The most direct link possible between non-tax crimes and tax fraud is that funds derived from non-tax violations either are or produce the unreported income.

*Turoff,* at 1043. *Turoff* thus makes transparent what this court presupposed in its earlier severance opinion: joinder of Count Twenty–Three to the balance of the indictment was proper under Rule 8(b), not just Rule 8(a), at least to the degree that the allegedly evaded income came from Wedtech and Ralph Lawrence.

What remained to be shown was that joinder of Count Twenty–Three was proper with respect to the income allegedly derived from Fogliano, inasmuch as the Government did not indict Simon for his dealings with Fogliano. That is where *McGrath* came in. The Government contended, as this court observed, that under *McGrath* "joinder of tax evasion counts *that deal with a single year* is proper under Rule 8(a)." 672 F.Supp. at 125 (emphasis supplied). In *McGrath,* the defendant was indicted on alleged Hobbs Act violations, but the Government also proved that he had failed to report various forms of unrelated interest income. 558 F.2d at 1104. As noted, the court held that the tax counts and the Hobbs Act counts were properly joined. It then went on to observe that "because the tax counts each deal with a single year, it would have been impossible to split the tax counts into those related and unrelated to the Hobbs Act violations." 558 F.2d at 1106 n. 6. But this is precisely what Simon would have had this court do, in contending that the Fogliano portions of the tax counts should have been split off from the others.[4] This court considered and rejected that conten-

tion in its original severance opinion. Even if income allegedly unreported in a tax count derives from a wide variety of sources, the tax count deals with *all* unreported income for a single tax year. It charges but one offense—tax evasion or some other tax crime—that may arise out of diverse components. But the crucial point is that even if it were possible to do what Simon suggests and what *McGrath* denies—to split tax counts according to the source of the income—it would avail Simon nothing. For we would then have, to take the present example, three counts of tax evasion for 1985: one for failing to report income derived from Wedtech, a second relating to Ralph Lawrence, and a third relating to Fogliano. These three counts would, however, be *both* offenses of the same or similar character, and so joinable under Rule 8(a), *and* members in a series of acts or transactions constituting an offense, namely tax evasion, and so joinable under Rule 8(b). This demonstrates that the rule of *McGrath,* treating calendar year tax offenses in a single count no matter what the source of the income, is the correct one, no matter which branch of Rule 8 is used.[5] Thus *McGrath,* in conjunction with *Roselli,* demonstrates that Count Twenty–Three is properly joined in this indictment, whether Rule 8(a) or Rule 8(b) is used in the analysis.

Especially now that *Turoff* forcefully underlines the fact that the tax counts in this indictment are properly joined to the non-tax counts under Rule 8(b), Simon's contentions are without force. Because, as has been proved, there is no misjoinder of Count Twenty–Three to the balance of this indictment, Simon's motion for a mistrial on this ground must be denied.

## IV. *Count Twenty–One*

■ As noted, many courts before the *Turoff* panel have used sweeping language

***

4. The point also holds, of course, if Simon's contention is that all of Count Twenty–Three should have been severed because it was, so to speak, contaminated by the alleged income from Fogliano. The teaching of *McGrath* is that even if such "contamination" exists it does not justify severance.

5. In fact, if the rule of *McGrath* is rejected, it of course becomes hard to see how to avoid multiplicity in charging a defendant with tax evasion. Surely the hypothetical division of Count Twenty–Three discussed in the text is in fact multiplicitous.

—what this court has called the primacy thesis—to describe the role of Rule 8(b) in multiple-defendant cases. Such language always goes beyond the facts of the particular cases being decided. The present case involves an unusual fact pattern that is almost certain not to have occurred to courts offering an expansive interpretation of Rule 8(b): a Simon-style joinder in which the party moving for severance, namely Simon, is the only one named in the count. This circumstance makes it necessary to explain why this fact pattern is unusual, and then to show that it presents an exception to the primacy thesis: contrary to Simon's contention, the settled precedent of the Second Circuit not only permits but requires application of Rule 8(a) in this context.

#### (A) Why Is This Indictment Different from All Other Indictments?

In *Turoff,* Turoff and his coappellants moved to sever two conspiracy counts, in both of which all three coappellants were named. This is the typical situation in which the primacy thesis is asserted: multiple defendants D, E, and F are each charged with offenses O, P, and Q. Suppose that defendant D moves to sever offense O. Often, though not invariably, O will be charged against D in a separate count in which D alone is named.[6] Thus, in moving to sever O, D is moving not only to sever the offense but simultaneously to sever his codefendants who are also charged with O. If the motion is denied, all three defendants will be tried together on O; if it is granted, D will be tried separately, and E and F together, on O. Abstractly, then, either Rule 8(a) or Rule 8(b) could apply; and to the degree that Rule 8(b) offers defendants greater protection against prejudice, there is a sound policy reason for preferring it to Rule 8(a).[7]

The case is different when D is the *only* defendant charged with O. Suppose, that is, that D is charged with O, P, and Q, but

that E and F are charged with P and Q only. In this case, D's motion to sever O is not a motion to sever defendants as well as offenses. It is true that if the motion is granted D will have a solo trial on O, distinct from the three-defendant joint trial on P and Q. But if the motion is denied, the result will not be a joint trial on O, because E and F were not charged with O. Here, D is trying to sever a count in which he alone is named, and an offense with which he alone is charged, from the other charges against himself. D is, in effect, acting to sever as a single defendant.

Replacing "D" by "Stanley Simon," "E" and "F" with the other defendants in this case, and "P" and "Q" by, for example, "RICO violation" and "conspiracy to violate RICO," as in Counts One and Two of the indictment in this case, we transform this abstract fact pattern into *United States v. Biaggi.* The abstract discussion attaches even more firmly to the present case when it is recalled that the original indictment, handed up on April 1, 1987, was against Stanley Simon alone. If Simon had moved to sever the Ralph Lawrence count from the indictment at any time before June 3, 1987, when the first superseding indictment added the other defendants, the motion would obviously have been governed by Rule 8(a). This court's holding in its severance opinion was that in this special case, in which Simon moves to sever a count in which he alone is named, the additional defendants make no difference: the motion is still governed, according to the decisions of the Second Circuit, by Rule 8(a).

#### (B) Second Circuit Precedent

The supposed primacy of Rule 8(b) over Rule 8(a) in multidefendant cases is frequently stated in terms such as these from *Roselli:* "Joinder of charges against multiple defendants is controlled by Rule 8(b), not by Rule 8(a)." 432 F.2d at 898. Like

---

6. One obvious exception arises when conspiracy is the offense, for the coconspirators are of course all named in the same count.

7. *Turoff,* of course, did not present quite the abstract case considered in the text, because the counts the coappellants sought to sever were both conspiracy counts, and all were named in each count.

the quotation from *Turoff* discussed above, this formulation, however, embodies the ambiguity between Simon-style and other joinders. What is meant by "joinder of charges against multiple defendants"? Certainly this contemplates Turoff-style joinders—joinder of multiple charges, or even a single charge, say C, against multiple defendants. Unfortunately, "joinder of charges against multiple defendants" might be taken to mean simply "joinder of charges in multiple-defendant cases," which would also cover Simon-style joinders. But the distinction should not be glossed over. In a Simon-style joinder, a single charge is joined against a single defendant in what happens to be a multidefendant case. Count Twenty–One of the indictment in *United States v. Biaggi*, is not an instance of joinder of offenses *against* multiple defendants, because Simon's codefendants are not being charged with the extortion of Ralph Lawrence.[8]

As far as this court has been able to determine, the ambiguity between Turoff-style and Simon-style joinders was not clearly pointed out until Judge Sand's decision in *United States v. Clemente*, 494 F.Supp. 1310 (S.D.N.Y.1980), *aff'd on other grounds sub nom. Fiumara v. United States*, 727 F.2d 209 (2d Cir.), *cert. denied*, 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 540 (1984). Judge Sand noted:

> When a defendant in a multiple-defendant case attacks the joinder for trial with defendants who are named in counts with him or in other counts, Rule 8(b) governs....

> When a defendant in a multiple defendant case named in one count seeks to sever other counts in which he alone is charged, Rule 8(a) controls.

494 F.Supp. at 1315 (citations omitted). That is, Judge Sand makes precisely the distinction drawn here between a case in which multiple defendants are jointly charged with multiple offenses (a Turoff-style joinder) and one in which a single defendant in a multidefendant case moves to sever a count in which he alone is charged (a Simon-style joinder).[9]

Judge Sand held that Rule 8(a) applies to the single defendant moving to sever a count in which he is singly charged. Judge Sand was scarcely unaware of the cases that hold that Rule 8(b) governs joinder of offenses in a multiple-defendant case. Indeed, in the first paragraph quoted from *Clemente* above, he cited the very cases the *Turoff* panel cited for that proposition. Closer examination shows, however, that those cases are inapposite.

The leading, and possibly the first, Second Circuit case on the primacy of Rule 8(b) is *United States v. Papadakis*, 510 F.2d 287, 300 (2d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975). This case was quoted by both the district court and the panel in *Turoff*, cited by Judge Sand in *Clemente*, and relied upon by Simon in his original severance motion.[10] This court discussed *Papadakis* briefly in its original severance opinion. 672 F.Supp. at 124. The manifest impor-

---

**8.** The *Roselli* court supported its view by citing *Cupo v. United States*, 359 F.2d 990 (D.C.Cir.), *cert. denied*, 385 U.S. 1013, 87 S.Ct. 723, 17 L.Ed.2d 549 (1966), which the *Turoff* court also cited as follows:

> When similar but unrelated offenses are jointly charged to a single defendant, some prejudice almost necessarily results, and the same is true when several defendants are jointly charged with a single offense or related offenses. Rule 8(a) permits the first sort of prejudice and Rule 8(b) the second. But the Rules do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses.

*Turoff*, at 1043 (quoting *Cupo*, 359 F.2d at 993). If anything, the "cumulation of prejudice" here condemned is that of charging each of several

multiple defendants with merely similar offenses—not that of charging a single defendant in a multiple-defendant case with merely similar offenses. Thus *Cupo*, one of the central cases providing a justification for the primacy thesis, does not seem to apply to Simon-style joinders.

**9.** This court cited *Clemente* to the same effect in its first severance opinion. *United States v. Biaggi*, 672 F.Supp. at 124.

**10.** The second case cited by Judge Sand and the *Turoff* panel, *United States v. Turbide*, 558 F.2d 1053, 1061 n. 7 (2d Cir.), *cert. denied*, 434 U.S. 934, 98 S.Ct. 421, 54 L.Ed.2d 293 (1977), merely quotes *Papadakis* in a footnote, and has, therefore, no more than cumulative value.

tance of the case makes it worth a return visit.

In *Papadakis*, officers of the New York City Police Department Narcotics Bureau's Special Investigation Unit (SIU) had seized one hundred five kilograms of heroin and cocaine, but had secreted five kilograms which they ultimately decided to sell. Papadakis was one of the buyers. The indictment joined various substantive counts against the defendants in various combinations, including two against Papadakis for purchase and sale of heroin, with two conspiracy counts. The second such count (Count Four of the indictment) charged Papadakis, among others, with conspiracy to violate the federal narcotics laws. The first (Count One) charged the SIU officers with conspiracy to violate the narcotics laws, to obstruct justice, and to obstruct the communication of information to a federal investigator. Papadakis was not named in Count One. On appeal, Papadakis maintained that Count One was misjoined to Count Four and the substantive counts against him. It was in this context that the Court of Appeals stated that Rule 8(b) governs joinder of offenses in multidefendant cases.

This recitation makes clear how *Papadakis* differs from the present case, and why it was appropriate to apply Rule 8(b) in *Papadakis*. Papadakis challenged the joinder of a count *in which he was not named* to counts in which he was, where the count in which he was not named charged a conspiracy broader than the one he was charged with.[11] In effect, to join Count One to Count Four was to join defendants as well as offenses, and so Rule 8(b) governed.[12] In the present case, to join Count Twenty–One to the balance of the indictment is not to join defendants as well as offenses, from the viewpoint of the movant, Stanley Simon; it is to join one count in which Stanley Simon is charged to other counts in which he and others are charged.[13]

Thus, the cases commonly cited—and, in particular, cited in *Turoff*—for the primacy of Rule 8(b) in multiple-defendant cases are not parallel to the present case. Cases that *are* parallel to the present case, such as *Clemente*, recognize that the single defendant trying to sever a count in which he alone is named presents an exception to the general rule of the primacy of Rule 8(b).

The case Judge Sand cited in *Clemente* in support of his claim that Rule 8(a) controls a Simon-style joinder in which it is the Simon defendant moving to sever, *United States v. Isaacs*, 493 F.2d 1124 (7th Cir.) (per curiam), *cert. denied*, 417 U.S. 976, 94

---

**11.** Discussing a contention of Papadakis's coappellant, the court noted that "the first count was broad enough to encompass the fourth count." 510 F.2d at 296.

**12.** This is true even though it was not as if the defendants in Count One were otherwise completely unrelated to Papadakis. They were also charged in the Count Four conspiracy, and joined with him in the substantive purchase and sale counts. In each of these cases, however, joinder was clearly appropriate under the required Rule 8(b) analysis. The point is that Papadakis found himself the subject of an indictment containing a count in which he was not charged *through* his joinder with the other defendants.

Rule 8(b) expressly provides, of course, for such situations by stating that "all of the defendants need not be charged in each count." This provides all the more reason to suppose that it, rather than Rule 8(a), governs in a *Papadakis*-style situation. A case like *Papadakis* could not even arise under Rule 8(a): the single defendant in an indictment under Rule 8(a) must obviously be charged in each count.

**13.** It is useful to compare the case the *Papadakis* court cited in applying Rule 8(b), *United States v. Bova*, 493 F.2d 33 (5th Cir.1974). The appellant was charged, along with his codefendant, one Coccuzza, with possession and distribution of heroin in the first two counts of the indictment; in the second two counts the codefendant alone was charged with the sale of heroin. Bova argued that the latter two counts were misjoined with the first two. This is a situation more like *Papadakis* than the present case, one in which the movant is not named in the counts he seeks to sever. As in *Papadakis*, the effect is that of joining a defendant as well as an offense, and Rule 8(b) should apply.

Interestingly, *Bova* is the converse of the present case. If the codefendant Coccuzza had moved to sever Counts Three and Four from Counts One and Two, the situation would have paralleled Simon's, and the question whether to apply Rule 8(a) or 8(b) would have been squarely joined.

S.Ct. 3183, 41 L.Ed.2d 1146 (1974), is instructive.[14] In *Isaacs*, both codefendants argued that counts in which they were singly charged were misjoined to counts in which they were jointly charged. Thus *Isaacs* squarely raised Simon-style joinder problems. The *Isaacs* court stated:

> When multiple defendants are charged in the same as well as multiple counts, a challenge by a single defendant to joinder of offenses in which he is charged is governed by Rule 8(a). Conversely, when one or more defendants challenge joinder and do not restrict their attack to those offenses which pertain solely to them, Rule 8(b) applies.

*Isaacs*, 493 F.2d at 1158. The citation for the second quoted sentence, pertaining to Rule 8(b), is to *Roselli*. That for the first quoted sentence, pertaining to Rule 8(a), is to *United States v. Sweig*, 441 F.2d 114 (2d Cir.), *cert. denied*, 403 U.S. 932, 91 S.Ct. 2256, 29 L.Ed.2d 711 (1971).

In *Sweig*, an opinion of Judge Lumbard's, Sweig and his codefendant were charged with conspiracy and other joint offenses, and Sweig was singly charged with perjury relating to certain grand jury testimony. Sweig moved to sever the conspiracy count from the perjury counts, on the ground that the former would prejudice the latter. Judge Lumbard wrote:

> Sweig's claim for a severance "as of right" under Rule 8 fails because Rule 8(a) permits the joinder of two or more offenses against a single defendant if the offenses are based on "two or more acts or transactions connected together or constituting parts of a common scheme or plan." We believe that Sweig's acts constituting the basis for the conspiracy charges and those constituting the basis for the perjury charges were so connected.

441 F.2d at 118. What is crucial here is that Judge Lumbard, in full awareness that *Sweig* was a two-defendant case, and presumably in full awareness of cases from other circuits, such as *Roselli*, that asserted the primacy of Rule 8(b), applied a Rule 8(a) analysis. The rationale can only be that expressed in *Isaacs*, that Sweig was trying to sever a count in which he alone was named, so that his motion had the *effect* of a Rule 8(a) motion even though there was another defendant.

Thus, the issue of Second Circuit law is simple. Before *Papadakis*, whose blanket statement of the primacy of Rule 8(b) was repeated without analysis in *Turbide* and *Turoff*, there was *Sweig*, a multidefendant case in which Rule 8(a) was applied. How are these two cases to be reconciled? Reconciled they must be, for it is the settled law of the Second Circuit that prior Second Circuit panel opinions bind subsequent Second Circuit panels: "This court is bound by a decision of a prior panel unless and until its rationale is overruled, implicitly or expressly, by the Supreme Court or this court *en banc*." *United States v. Ianniello*, 808 F.2d 184, 190 (2d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987). *See also In re Jaylaw Drug, Inc.*, 621 F.2d 524, 527 (2d Cir.1980); *United States v. Fatico*, 603 F.2d 1053, 1058 (2d Cir.1979), *cert. denied*, 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980); *Ingram v. Kumar*, 585 F.2d 566, 568 (2d Cir.1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). *Papadakis*, of course, was a panel decision, not an *en banc* reconsideration of the doctrine of *Sweig;* and neither in *Papadakis* nor in any other Second Circuit decision that has come to this court's attention is there an analysis indicating that either the United States Supreme Court or the Second Circuit sitting *en banc* has overruled the reasoning of *Sweig.* *Cf. Boothe v. Hammock*, 605 F.2d 661, 663–64 (2d Cir.1979) (Second Circuit analysis of Supreme Court decision concludes that Supreme Court overruled earlier Second Circuit cases by implication).

---

**14.** As Judge Sand noted, Senior Judge Lumbard of the Second Circuit was a member of the panel in *Isaacs*. Indeed, the entire panel sat by designation: the appeal concerned the bribery conviction of Otto Kerner, Jr., formerly Governor of Illinois and at the time of trial a sitting Judge on the Seventh Circuit. The remaining active Judges of the Seventh Circuit recused themselves. *See Isaacs*, 493 F.2d at 1167–68.

*Sweig* and *Papadakis* are, of course, perfectly consistent. *Papadakis*, however, must be limited to the situation discussed in the case it cites, *United States v. Bova*, 493 F.2d 33 (5th Cir.1974), in which a defendant D moves to sever a count in which another defendant E is charged but D is not, or to the *Turoff* situation in which both D and E are charged with a particular offense. *Cf. Isaacs*, 493 F.2d at 1158 ("[W]hen ... defendants challenge joinder and do not restrict their attack to *those offenses which pertain solely to them*, Rule 8(b) applies" (emphasis supplied).). In a case such as *Bova* or *Papadakis*, potential prejudice to D is clear; an offense with which he is not charged appears in the indictment against him, simply because he is joined to *E*. An offense with which D is not charged is joined to him *through* his joinder to E. Here it is most sensible to regard the motion for severance as arising under Rule 8(b). So too, if both D and E are charged with the same offense, D's motion for severance is one for a separate trial *on that offense*, and to that extent is appropriately regarded as a motion to sever his codefendant. In that situation, as Judge Sand observed in *Clemente*, Rule 8(b) clearly controls.

The situation that arose in *Sweig, Clemente*, and the present case is quite different. As noted, if Simon's motion to sever Count Twenty–One were granted, the result would not be that Simon gains a solo trial whereas he would have had a joint trial on that count if the motion were denied. If the motion were granted, there would be no sense in which Simon was severed from any of his codefendants *on Count Twenty–One*, for none are named in that count. The effect of the motion is to sever one part of the case against Simon from another part of the case against Simon, without affecting the rest of the trial. Thus, as the *Sweig* and *Clemente* courts recognized, such a motion is a Rule 8(a) motion, despite the presence of other defendants, in a way the motions discussed above are not.

This court sees no alternative but to hold that *Sweig* and *Papadakis* are consistent and binding. This entails that a motion for severance such as Simon offers is governed by Rule 8(a), not Rule 8(b). That is, a Simon-style joinder in which the party in Simon's position is moving for severance is an exception to the primacy thesis. In view of this conclusion of Second Circuit law, the court sees no need to reevaluate its conclusion that the alleged extortion of Ralph Lawrence is an offense of "the same or similar character" to the Wedtech-related extortions with which Simon is charged, holds that its original decision to deny a severance was proper, and therefore denies Simon's motion for a mistrial.

## V. Count Twenty–One—Rule 8(b) Analysis

■ Finally, the court observes that even if Rule 8(b) rather than Rule 8(a) applied to Simon's motion, it should be denied. The demonstration is important for the completeness of the court's holding and analysis. The Rule 8(a) analysis has demonstrated, and rested on, an asymmetry between defendants: Rule 8(a) applies to a defendant seeking to sever a count against himself that is not a count against anybody else. The decisions canvassed herein suggest that things are different when a codefendant seeks to sever such a count. In the present case, the decisions suggest that if anybody other than Simon had moved to sever Count Twenty–One, *their* motion would have been governed by Rule 8(b) rather than Rule 8(a). Before trial, John Mariotta indeed joined Simon's motion, his counsel remarking that "Mariotta would be extremely prejudiced by a joint trial with Simon where Simon is tried on counts which have nothing to do with Mariotta or Wedtech." Affidavit of Jeffrey Glekel at 2 n.*. In its pretrial opinion, this court construed Mariotta to be moving for relief under Fed.R.Crim.P. 14.[15] For the sake of

---

15. The court takes this occasion to observe that counsel for defendant Peter Neglia purported to join Simon's present motion on the ground of "spillover prejudice." Trial Transcript at 18604.

A motion for relief from prejudicial joinder is made under Fed.R.Crim.P. 14, not Rule 8, and as such is expressly required to be made before

completeness, the court now observes that even had Mariotta's motion been construed as one for a severance under Rule 8(b), the motion was correctly denied.[16]

It is clear that in conspiracy cases, particularly RICO cases, the mere allegation of conspiracy is sufficient to tie defendants closely enough together for Rule 8(b) purposes. A RICO count itself, "virtually by definition, ... constitute[s] a 'series of acts or transactions' sufficiently intertwined to permit a joint trial of all defendants." *United States v. Bagaric*, 706 F.2d 42, 69 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 134, 78 L.Ed.2d 128 (1983). Equally, the racketeering acts constituting the alleged RICO violation are closely enough related to permit a joint trial under Rule 8(b).[17] The only question is whether Simon's alleged extortion of Ralph Lawrence is part of the same series of acts or transactions as any of the racketeering acts, so as to sustain joinder under Rule 8(b).[18]

In its original severance opinion this court was content to notice that the indictment, as supplemented by a letter provided by the Government in response to an order of the court, alleged that Simon's extortion of Ralph Lawrence and the other extortions charged against Simon were crimes of "the same or similar character" and so properly joinable under Rule 8(a). *United States v. Biaggi*, 672 F.Supp. at 124–25. To establish that they are joinable under Rule 8(b) requires slightly deeper probing. It is Ralph Lawrence who provides the nexus between Count Twenty–One and the extortion racketeering acts charged against Simon; it is Simon's pattern of activities with Ralph Lawrence that constitutes the "series of acts or transactions constituting ... offenses." Count Twenty–One charges Simon with extorting Lawrence by giving him pay raises and then forcing him to kick

---

trial by Fed.R.Crim.P. 12(b)(5). Neglia's motion is therefore denied.

**16.** There is at least a question whether there even *is* any significant distinction in the Second Circuit between Rule 8(b)'s requirement of the "same series of acts or transactions constituting an offense or offenses" and the requirements of Rule 8(a). For in *United States v. Bernstein*, 533 F.2d 775 (2d Cir.), *cert. denied*, 429 U.S. 998, 97 S.Ct. 523, 50 L.Ed.2d 608 (1976), Judge Oakes wrote that "it is well established that under Fed.R.Crim.P. 8(b) joinder of multiple defendants is proper if they are alleged to have participated in the same series of acts which are part of a common scheme or plan, or connected together," 533 F.2d at 789 (footnote omitted). This is, of course, the language of Rule 8(a), not the "same series of acts or transactions" formulation of Rule 8(b). It may be, then, that the Court of Appeals has collapsed Rule 8(b) into Rule 8(a); at any rate, this court has not uncovered any Second Circuit discussions that would indicate the contrary.

For the purposes of the present discussion, however, the court will assume that there is some distinction between the requirements of Rule 8(a) and Rule 8(b) in the Second Circuit. *See* 1 C. Wright, *supra* note 3, § 144 at 502 & n. 12 (collecting cases, including *Bernstein*, and discussing "common scheme" and "connected together" interpretation of Rule 8(b) adopted by Second and other Circuits, without drawing conclusion that interpreting Rule 8(b) in terms of Rule 8(a) makes "same transaction" language of Rule 8(b) surplusage and seems to vitiate primacy thesis).

**17.** *See United States v. Weisman*, 624 F.2d 1118, 1129 (2d Cir.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980):

If ... [predicate] acts could properly be considered part of a "pattern of racketeering activity," we see no reason why they could not similarly constitute part of a "series of acts or transactions constituting an offense" within the meaning of Rule 8(b). Indeed, a construction of Rule 8(b) that required a closer relationship between transactions than that necessary to establish a "pattern of racketeering activity" under RICO might possibly prohibit joinder in circumstances where Congress clearly envisioned a single trial.

**18.** It is important to observe that we are asking whether *Simon's* activities, as charged in the racketeering acts in which he is named and in Count Twenty–One, form a series of acts or transactions that are joinable under Rule 8(b). In essence, this is to apply a Rule 8(b) analysis to a Rule 8(a) situation—joinder of offenses against a single defendant—as the primacy thesis commands.

In the present case, only John Mariotta made anything that could be construed as a Rule 8(b) motion before or during trial, and so only he has standing to argue Rule 8 misjoinder on appeal. In determining whether Count Twenty–One is properly joined to the balance of the indictment, however, we do *not* ask whether it is part of a series of acts or transactions with Mariotta's activities. It is enough that the charges against Simon form a whole joinable under Rule 8(b) and that Simon be joinable as a defendant to Mariotta under 8(b).

back portions of those raises in a remarkable variety of forms. According to the evidence that emerged at trial, not only did Lawrence provide Simon with such monetary benefits and other things of value as petty cash, payment for meals, and gambling chips; Lawrence also provided Simon with services outside the scope of his duties as Assistant to the Borough President of the Bronx. Such services ranged from the petty and even degrading—taking Simon's laundry to the dry cleaners, driving his children to school, buying cat food, *see, e.g.,* Trial Transcript at 10854–57—to intermediation in the racketeering acts Simon is charged with in the indictment. In particular, the Government has charged that Lawrence was Simon's courier for the payment of a substantial part of the $50,000 in cash and other benefits Simon is charged with receiving from Wedtech as one of the racketeering acts.

The charged extortion from Wedtech, then, was just one of the manifold activities in which Lawrence is alleged to have acted as Simon's intermediary. Some of those activities are alleged by the Government to have included extortion from Lawrence himself; others are alleged to constitute extortion from Wedtech. But the fact that the victims are unrelated does not show that the alleged extortions are not part of the same series of transactions constituting offenses. All it shows is that Simon turned on his own instrument for carrying out his extortionate designs.

Some Circuits have set out a test for Rule 8(b) joinder of which the Fifth Circuit's statement in *United States v. Harrelson,* 754 F.2d 1153 (5th Cir.1985), *cert. denied,* 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985), is typical:

> Whether the counts of an indictment fulfill the "same series" requirement is determined by examining " 'the relatedness of the facts underlying each offense.... [W]hen the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper.' ... When there is no 'substantial identity of facts or participants between the two offenses, there is no "series" of facts under Rule 8(b).' "

754 F.2d at 1176–77 (citations omitted). *See also, e.g., Roselli,* 432 F.2d at 899. Even under this test, which appears stricter than any reasonably attributable to the Second Circuit, joinder would be proper under Rule 8(b). Here, there is certainly a substantial identity of participants. And the relatedness of the underlying facts can be seen by considering what would be necessary to prove Count Twenty–One. Count Twenty–One charges Simon with demanding and obtaining a portion of Lawrence's salary in extortionate fashion. In order to prove that Simon acted under color of official right or that Lawrence acted out of fear of economic loss, it is not enough to show that Lawrence conferred benefits on Simon; the Government would have to introduce proof of Lawrence's salary increases, and to establish that Simon had induced Lawrence, under color of official right or through fear, to kick back a portion of those increases. Such proof could have included—and at trial did include—an actual or perceived threat by Simon to deprive Lawrence of his job if he did not accept Simon's offer, which Lawrence allusively characterized as one he "couldn't refuse." A threat to fire Lawrence, however, shows that Simon's extortion scheme was larger than the one alleged in Count Twenty–One; the *quid pro quo* was not (or not only) Lawrence's undertaking to kick back part of his salary increase to Simon, but to accept the offer he couldn't refuse—that is, to continue acting as Simon's factotum, providing him with services to which Simon was not entitled as a result of his office, including acting as courier for the alleged extortion payments from Wedtech. That is, the alleged extortions of two different entities—Lawrence and Wedtech—were embedded in a single extortionate scheme in which Lawrence was Simon's instrument. Thus, to prove the extortion of Lawrence, the Government would necessarily have to bring out the full story of Simon's use of Lawrence, including his function as a go-between for Simon and Wedtech, which would in turn require proof of Simon's extortion of Wedtech. In this way,

Count Twenty–One and the extortion racketeering acts against Simon are parts of a series of transactions constituting multiple extortions, and are therefore sufficiently related to satisfy the joinder requirements of Rule 8(b).

For all the reasons stated above, Simon's motion for a mistrial is denied.